John E. Tenney, J.
Plaintiff S & L Paving Corporation (S & L) seeks to recover damages from the defendant Allis-Chalmers Manufacturing Company (A-C) for an alleged breach of contract. The defendant MacMurray Tractor, Inc. (MacMurray) became insolvent and did not participate in the trial of this action. However, MacMurray was a named defendant also charged with a breach of contract arising out of the same transaction.
S&L contracted with MacMurray for the purchase of a piece of equipment known as an Allis-Chalmers shovel with a specially attached Ulrich bucket. A conditional sales installment contract was entered into on April 16, 1964. It provided that the purchase price would be reduced by a $6,000 credit for a trade-in shovel. The shovel was defective upon delivery, was never repaired, and was repossessed by A-C. S&L seeks to recover the fair and reasonable value of the trade-in plus damages which resulted from the alleged breach of contract.
S&L delivered the trade-in shovel to MacMurray, the local dealer for A-C. Later, on May 21, the new shovel was delivered to S & L, apparently by MacMurray. It was defective, and S&L attempted to return it to MacMurray. At MacMurray’s yard, S&L first learned of its insolvency and found the Sheriff had taken possession of all of MacMurray’s property including its trade-in. S&L kept the defective shovel and called A-C to discuss its problem and a possible solution.
A-C’s sales representative, John Donoghue (who prepared the conditional sales contract and participated as an adviser during the entire transaction) ordered a mechanic to make the necessary repairs. The mechanic was unsuccessful. Mr. Donoghue then referred S & L to his immediate superior, Mr. Hertel, at the A-C home office in Milwaukee, Wisconsin. . Mr. Hertel sent a factory repairman who was also unsuccessful in repairing the machine. Mr. Hertel advised S&L that the dealer agreement with MacMurray had been canceled. After two unsuccessful attempts at repairing the shovel, S&L was advised to deliver it to the proposed new dealer for A-C, Atlantic Tug & Equipment Company. S&L declined because of the expense involved. There were a series of conversations by S & L wdth Mr. Hertel and Mr. Donoghue in an attempt to resolve the problem which continued until some time around the 10th bf June. Later, a representative of A-C took the machine and *92 delivered it to Atlantic Tug’syard where it lay for several weeks. A-C ultimately sold the machine to a third party.
There was no further contacts between the parties. S & L was advised by mail that the conditional sales contract had been assigned to A-C or its credit subsidiary, and was asked to make payments. S & L refused because A-C had possession. A-C apparently made no other attempts to contact S & L and sold the tractor.[1] A-C contends that it had no contractual arrangement with S & L, and even if it did, S & L repudiated the agreement by certain oral statements and conduct of its president. Mr. Donoghue said that he was told by S & L’s president that he would “ take it (the value of the trade-in) out of his (MacMurray’s) hide ”. On another occasion he was told, “ Get the machine off the job. I don’t want it. Take it off.” He also suggested that S & L had bought or intended to buy a replacement shovel from the Caterpillar Corporation.
There are four issues in this case. (1) Was there a contract between A-C & S & L? (2) If answered in 'the affirmative, was it rescinded by the conversations of S & L’s president? (3) If it was not rescinded, did A-C breach the contract? (4) Has S & L properly pleaded its cause of action or can the pleadings be amended to conform to the proof?
In considering the issues raised by this action, the provisions of the Uniform Commercial Code-do not apply since they did •not become effective until September 27, 1964.
A-C contends that in attempting to make the repairs it was complying with its warranty agreement which limits its liability to the “ repair or replacement of defective parts, all other damages, statutory or otherwise, being expressly waived.” It further contends that no action on its part could extend this liability because of the following terms in the warranty: “No representative of the Company has authority to change this warranty or this contract in any manner whatsoever, and no attempt to repair or promise to repair or improve the machinery covered by this contract by any representative of the Company shall waive any consideration of the contract or the change or extend this warranty in any manner whatsoever.”
Clearly, A-C’s attempt to repair could not alter the relationship between it and S & L. If that were all A-C had done, S & L would at best have a claim for a breach of the warranty agree *93 ment, limited by its terms. However, A-C took several steps up to and including repossession of the shovel which at the time it had no right to do under any agreement. As an assignee, it could only repossess if S & L failed in its obligation under the contract. There is no evidence that there was such a failure at the time of the repossession.
At the time of the delivery of the shovel on May 24, so far as S & L knew, it was still operating under its written contract. The shovel was delivered by MacMurray, and when it proved defective, an attempt was made to seek recourse from MacMurray. Then, S&L learned what A-C already knew: (1) MacMurray’s financial condition, (2) the termination of his dealer’s agreement. As previously indicated, it ultimately learned that A-C had started a rescission action to recover its property and had also taken a written assignment of the contract.
Through the assignment, A-C had acquired the right to "collect the balance of the payments, and there was clearly no obligation of payment to MacMurray. (Restatement, Contracts, § 423.) A-C also had the obligation to repair. Its contention that it had not sufficient time to make the repairs because of S & L’s interference is rejected. It was aware of the pressing time requirements facing S&L even before delivery. It breached its warranty and was liable to S & L for that breach before it repossessed the machine.
The breach occurred when the equipment was delivered in a defective, unworkable condition and it was unrepaired after a reasonable time. S&L had the right to rescind the contract and demand its down payment (5 Williston [Rev. ed.], § 1460A), since “the buyer has not received what he bargained for.” (2 Williston, Sales, § 608.)
The act of assignment did not release the assigner from his obligations under the contract. (Rochester Lantern Co. v. Stiles & Parker Press Co., 135 N. Y. 209. Cf. Liberty Wall Paper Co. v. Stoner Wall Paper Mfg. Co., 59 App. Div. 353, affd. 170 N. Y. 582; Rosenthal Paper Co. v. National Folding Box & Paper Co., 226 N. Y. 313. Restatement, Contracts, §§ 150-152.) “Frequently an assignee of contract rights undertakes to perform the assignor’s duties also. This is not operative as a novation, since the assignor remains bound by those duties, so long as his creditor does not accept the assignee’s new promise in lieu of the duty of the assignor. * * * Such an assumption merely gives the creditor an additional security.” (6 Corbin, Contracts, § 1301.)
However, A-C’s conduct indicated that MacMurray had been discharged, and implied a promise to assume his responsibilities. *94 "Whether S & L consented to the substitution of A-C and the discharge of MacMurray is of no consequence. (Restatements, Contracts, §§ 427-428.) “ It may properly be assumed that he consents to the discharge [because it is presumably beneficial to him] although he still has a right of disclaimer. ’ ’ (6 Williston, Contracts [Rev. ed.], § 1870, p. 5255.) After its failure to repair, A-C repossessed the defective tractor. It is inconceivable that 5 & L would surrender its only security to recover its damages and look to MacMurray when it knew his insolvent position. This is particularly true when possession was delivered to a new dealer, by agreement and direction of A-C.
A true novation usually requires' three parties, where a party is discharged from an obligation or a benefit and a new party is substituted in his place. (Griggs v. Day, 136 N. Y. 152, 160.) The transaction must be supported by some benefit or consideration accruing to or being paid to the substituted party. (Restatement, Contracts, §§ 424-427.) Section 424 of the Restatement defines a novation as “ a contract that (a) discharges immediately a previous contractual duty or a duty to make' compensation, and (b) creates a new contractual duty, and (c) includes as a party one who neither owed the previous duty nor was entitled to its performance. ’ ’ It may be a promise to perform the substituted party’s duties. (Bank of United States v. Irving Nat. Bank, 122 Misc. 815; Rogers v. Thomson, 215 App. Div. 541; Drake v. Hodgson, 207 App. Div. 783; Schloss Bros. & Co. v. Bennett, 260 N. Y. 243.)
A-C had an interest in completing its sale, an obligation to furnish a workable product, and a business reputation to protect. This is adequate consideration for discharging its insolvent dealer and assuming his responsibilities to the buyer. (Matter of Huxley, 294 N. Y. 146; Bandman v. Finn, 185 N. Y. 508; 6 Williston, Contracts, § 1877.) Its entire conduct indicates a deliberateness, a finality, a clear-cut intention to create a new relationship. More precisely, it intended to substitute itself for any obligations MacMurray may have owed to S & L. (Schloss Bros. & Co. v. Bennett, 260 N. Y. 243, supra; Goldbard v. Empire State Ins. Co., 5 A D 2d 230; Procter & Gamble Distr. Co. v. Lawrence Amer. Field Warehousing Corp., 22 A D 2d 420; National Equip. Rental v. Sebert Mfg. Corp., 42 Misc 2d 415. See, also, Langlois v. Langlois, 5 A D 2d 75; Moers v. Moers, 229 N. Y. 294; Ostrander v. Ostrander, 199 App. Div. 437; Henderson v. Sheppard, 231 App. Div. 610.)
The court in Schloss Bros. & Co. v. Bennett (260 N. Y. 243, supra) prevented the buyer from proceeding against the discharged ‘debtor because it had derived certain benefits from *95 the substitute. Here, S&L relied upon A-C and changed its position accordingly. Thus, under the reasoning set forth in Schloss Bros. & Co. v. Bennett (supra), action by S & L against MacMurray would be precluded.
The existence of a novation is more commonly raised as a defense for one claiming discharge of an obligation. (Rogers v. Thomson, 215 App. Div. 541, supra; Goldbard v. Empire State Ins. Co., 5 A D 2d 230, supra.) Nevertheless, there is every indication that it can be used affirmatively to seek redress from a - substituted obligor. (6 Corbin, Contracts, §§ 1292, 1299; Restatement, Contracts, § 425.)
Whether A-C’s agreement with S&L and its conduct towards MacMurray created a new contract with S & L is a question for the trier of the facts. (Katz v. Bernstein, 236 App. Div. 456; 6 Williston, Contracts [Rev. ed.], § 1875.) “It is frequently difficult to determine whether a new agreement is a substituted contract * * * It is wholly a question of intention, to be determined by the usual processes of interpretation, implication, and construction. ’' (6 Corbin, Contracts, § 1293, p. 190.)
A substituted contract between the same parties may also be a novation. (6 Corbin, Contracts, § 1293; Bandman v. Finn, 185 N. Y. 508; Crimmins v. Carlyle Realty Co., 132 App. Div. 664, affd. 196 N. Y. 532.)
A-C contends that if there was a contract, it was repudiated before the machine was repossessed. It contends that the statements made by Bianchi were clear evidence of his intent to cancel the contract and forfeit any claims for dam'ages. An expression of repudiation is not a cancellation or an offer to rescind. (5A Corbin, Contracts, § 1236; 5 Williston, Contracts [Rev. ed.], § 1324.) Statements of a party made under a condition of stress or frustration, created by the party pretending reliance on them, must be carefully scrutinized by the trier of the facts. A-C was aware of the pressing need for the equipment and was somewhat frustrated itself by its inability to, make the repairs. There is no justification for its interpretation of Bianchi’s words. Clearly, it did not consider them a repudiation, nor did it consider the surrender of possession the termination of the transaction and its responsibilities. Its true intention and understanding of the transaction is indicated by its attempt to collect on the installment contract several weeks later.
A-C further contends that plaintiff cannot recover because he has not framed his pleadings correctly. The pleadings assert in various forms causes of action for breach of contract and breach of warranty. They do not allege a new contract or a *96 substitution with. A-C, but seek to recover under the written agreement.. This decision is not entirely inconsistent with that theory, since it determines that A-C has assumed MacMurray’s obligations under the written agreement.
A-C was fully aware of the claims against it and the amount of damages is unchanged. Furthermore, A-C has had facts in its exclusive possession which were unknown to plaintiff until the trial, which conceivably would change the wording of the pleadings but not the substance. There is no indication that amendment would be unfair or prejudicial. Plaintiff’s pleadings are deemed amended to conform to the proof (CPLR 3025, subd. [c]; Harriss v. Tams, 258 N. Y. 228), especially since no objection was made to the evidence establishing the cause of action. (Novak v. Melnyk, 224 App. Div. 492, 495, affd. 252 N. Y. 558.)
There is no creditable evidence that plaintiff was damaged by the delay in delivery of an operable machine. Plaintiff was required to rent substitute equipment, but he was never required to make any payments for A-C’s machine. There is no indication that the rental costs exceeded the installment payments, depreciation and the other factors. There is no proof of other extraordinary expense nor is there any indication of loss of profit on any of the allegedly “ special ’ ’ projects. Finally, there is no proof that A-C anticipated any special damages when it substituted itself for MacMurray. (5 Williston, Contracts, §§ 1344-1355; Czarnikow-Rionda Co. v. Federal Sugar Refining Co., 255 N. Y. 33.)
Plaintiff is entitled to the fair and reasonable value of its trade-in tractor. The evidence on both sides is weak and somewhat speculative. Neither party’s “expert” witnesses truly qualified as experts. Apparently, because of the nature of this type of equipment, its fair and reasonable value in a used state is difficult to determine. There are few sales and each would depend upon special circumstances regarding value. A-C’s witness Donoghue appears to have greater experience in the actual purchase and sale of similar equipment, and his determination of value is more worthy of consideration.
Thus, in accordance with the foregoing decision, judgment is granted to the plaintiff in the amount of $3,500, plus interest at the rate of 6% per annum from May 21, 1964 until the date of entry of judgment.

. Before May 21,1964, Allis-Chalmers had instituted a replevin action against MacMurray to recover its equipment, including the new shovel scheduled for delivery. S & L had no knowledge of this procédure at the time it surrendered possession of its trade-in, or the new machine to Atlantic Tug, or at the time this lawsuit-was commenced.