Daniel Gr. Albert, J.
When a new car is damaged while being transported from the manufacturer to the dealer for delivery to the purchaser, does the dealer, after having the car repaired for $346.44, perpetrate a fraud upon the buyer by concealing these facts and by failing to advise her of such damage to the supposedly new vehicle prior to consummation of the transaction? This question, among others, was answered in the affirmative by the jury which found the defendant dealer liable to the plaintiff purchaser for breach of contract, breach of warranty and fraud, and these findings will not be set aside by this court on this posttrial motion by the defendant for judgment non obstante veredico or for a new trial pursuant to CPLB 4404.
In this lawsuit plaintiff Lee Luther alleged three causes of action against the sole remaining defendant, Bud-Jack Corp.:
1) A cause of action for breach of warranty of merchantability based upon the contract of sale between Bud-Jack Corp. and the plaintiff;
2) A cause of action under the Uniform Commercial Code based upon that defendant’s failure to accept plaintiff’s notice *926 of revocation and the tender of her automobile back to the defendant; and
3) A cause of action in fraud based upon the defendant’s failure to advise plaintiff that her automobile had been damaged prior to its delivery to her. Plaintiff sought damages in the amount of $4,375.98.
briefly in this case the evidence established that plaintiff entered into a contract to purchase a 1971 Fiat automobile, a 124 Spider convertible, from the defendant on or about May 10, 1971, and such a car was delivered to the plaintiff on May 17, 1971. The defendant; was paid in full fot* said automobile. Plaintiff claimed that from the time the car was delivered to her it did not operate in a proper manner, that the doors did not open and close properly, that various portions of the car did not fit properly, that the car started to rust within one month of delivery, that parts of the automobile fell off, along with many other complaints, and that she immediately apprised the defendant of these difficulties. She further claimed, and it was admitted by the defendant, that the car was damaged while in transit from the manufacturer to the defendant, that the left door and left front fender were repaired at a cost of $346.44, and that plaintiff was not advised of this fact prior to delivery of the car to her, and not until October, 1971. Plaintiff advised the defendant by letter in June' of 1971 that because of its many defects she wished to return the car for a refund of her purchase price. When these defects remained uncorrected and after plaintiff discovered the prior accident, she sent defendant a formal notice of revocation of her prior acceptance of the automobile in March of 1972. Defendant admitted that the car was damaged prior to delivery to the plaintiff and that plaintiff was not advised of same. Defendant claimed, however, that the damages were slight, that such an incident is not unusual, that it repaired the automobile, and that in all respects it was a new automobile which was being sold to the plaintiff. Defendant denied that it breached any warranty to the plaintiff, that it was compelled to accept plaintiff’s tender of the automobile back to the defendant, or that it committed any fraud upon the plaintiff.
Section 2-314 of the TJniform Commercial Code provides that in a sale of a new automobile such as occurred herein, the dealer gives to the purchaser an implied warranty of merchantability, that is, the automobile would be at least such as would pass without objection in the trade under the contract description, and is fit for the ordinary purposes for which such product is *927 used. The jury was instructed that it had to determine, therefore, whether the automobile which defendant delivered to the plaintiff was “ merchantable ”, that is, whether the 1971 Fiat which the plaintiff bought from the defendant complied with the standards of quality which a purchaser would ordinarily be entitled to expect when buying a new car of the same type. The jury’s verdict in plaintiff’s favor on this cause of action is not against the weight of the credible evidence and will not be disturbed. (Codling v. Paglia, 38 A D 2d 154, 160.)
Section 2-608 of the Uniform Commercial Code provides that a buyer who has accepted the delivery of merchandise such as the automobile in question may revoke his acceptance if the automobile does not conform to the afore-mentioned standards of quality, thereby impairing its value, and if the automobile was accepted because the purchaser could not reasonably have discovered its nonconformity or because of the seller’s assurances that it did conform. Any such revocation of acceptance must occur within a reasonable time after the buyer discovered or should have discovered the ground for it. In this case, plaintiff tendered a formal notice of revocation of acceptance to the defendant in March of 1972, and the jury was advised that it had to determine whether the plaintiff was entitled under the facts in this case to properly serve such a notice of revocation and, if so, whether the notice was timely made. In light of all the circumstances including but not limited to plaintiff’s earlier attempt at revocation, the total failure of the defendant to notify plaintiff of the damage to the new Fiat (she was advised of such damage by the manufacturer in October, 1971), and the constant representation that any defects in the car would be rectified, the jury’s verdict in plaintiff’s favor on the second cause of action is not against the weight of the evidence and will not be disturbed. (Lhotta v. Bleecker, 259 App. Div. 920; Smith v. Hedges, 170 App. Div. 349; see, also, Carretta v. Bud Jack Corp., 64 Misc 2d 689.)
Plaintiff’s third cause of action was based upon fraud and the jury was instructed that for plaintiff to establish such a claim she had to prove 1) that the defendant made a representation, express or implied, to the plaintiff concerning the condition or quality of the automobile which she received from the defendant, 2) that the representation was false at the time it was made, 3) that the defendant knew the representation to be false at the time it was made and intended to deceive the plaintiff, and 4) that the plaintiff reasonably and justifiably relied upon the false representation and that the plaintiff suffered monetary damage *928 as a result of her reliance thereon. There was sufficient evidence for the jury to conclude that the defendant, at least impliedly if not expressly, falsely and intentionally represented to plaintiff upon the delivery of the 1971 Fiat to her that the car was in fact “ new ”, delivered to her as manufactured, and that it had not been damaged to the not insignificant extent of $350. Defendant purposely concealed this fact from plaintiff, who credibly testified that she would not have accepted the vehicle had she known its actual condition. Defendant’s nondisclosure was accompanied by several overt acts, including the delivery of the automobile to plaintiff pursuant to the contract, and plaintiff’s reliance and monetary damage are manifest. Hence, the jury’s determination in plaintiff’s favor on this cause of action will not be set aside. (Knelling v. Loan Mfg. Co., 183 N. Y. 78; Moser v. Spizzirro, 31 A D 2d 537.)
In regard to the assessment by the jury of $3,000 in damages, the jury was instructed in part as follows :* ‘ ‘ [If you find for the plaintiff] you will make such an award as you think just and proper to fairly compensate the plaintiff Lee Luther for the damages which she has suffered as a result of the transaction in question. In this regard you may take into consideration the purchase price of the automobile, the extent of any damage and/or defects in said automobile, the cost to repair any such defects, and the value of the use of the car which plaintiff has obtained since delivery to her in May, 1971. In her complaint plaintiff has sought the amount of $4,375.98 in damages, and you may not grant an award in excess of that amount.”
Since und^r one or more of the theories of the case as presented to the jury it could reasonably award plaintiff the purchase price of,the automobile ($4,375.98) less a reasonable amount for the value of the use of the car which plaintiff had obtained from the time of its delivery in May, 1971 to the trial in November, 1972 (conceded by defendant), its verdict of $3,000 cannot loe considered unjustified as a matter of law or contrary to the weight of the credible evidence, and hence will not be set aside by this court. (S & L Paving Corp. v. MacMurray Tractor, 61 Misc 2d 90.)
As a final point it should be noted that during its deliberations the jury inquired whether, if its verdict were in plaintiff’s favor, she would be allowed to keep the car. Since the defendant had refused to accept every attempt at revocation or rescission by the plaintiff, the court answered the jury’s question in the affirma *929 tive, with the consent of counsel to both parties. The defendant now claims to be entitled to its property back, but it acknowledges that it acquiesced in the court’s .supplementary instruction to the jury and it clearly waived any right to the return of the property by its steadfast refusal to accept the property back from within one month of delivery up until the jury’s verdict. It ill becomes the defendant to now seek the return of a vehicle which it avoided like the plague until the return of a verdict for $3,000 against it.
A short form order denying defendant’s motion in all respects has been signed simultaneously herewith.

 No exception was taken by either party to this or any other portion of the court’s charge to the jury. *