Charles H. Cohen, J.
In this action the buyer of a used car seeks to recover the purchase price from the seller based upon a claim of breach of warranty. Plaintiff also sued for incidental expenses but submitted no proof in support of that claim or in support of a cause of action for fraud seeking punitive damages.
Following a contract dated February 28, 1976 for the sale and purchase of this used car, plaintiff on March 5, 1976 paid to defendant the balance of the purchase price which totaled $2,688 (although the bill of sale dated March 5, 1976 set forth a price of $2,750.50). On or about March 10, 1976 the car was delivered to plaintiff who accepted it.
On or about April 12, 1976 the car broke down after having been driven about 300 miles. Prior to the breakdown, the engine had been losing oil and plaintiff’s son had been adding oil. Defendant’s employee, who examined the car after it had been towed to defendant’s premises on April 12, 1976, stated that the engine had "seized” and was out of oil. After some discussion, defendant agreed to put another engine in the car. On April 20, 1976 plaintiff, after making reference to the defective engine as well as to other defects such as a defective odometer, notified defendant that plaintiff elected to "rescind” the sale and demanded the return of the purchase price. This notice further stated that plaintiff would consider "re-accepting” the car "if and when all the conditions described above are corrected, all without prejudice” to the rescission. Defendant performed work on the car and on May 1, 1976 plaintiff’s son picked it up. A few days later, with the engine continuing to leak oil, the car again broke down. After the car was examined by plaintiff’s mechanic, it was again towed and delivered to defendant’s premises. At about the same time, on May 6, 1976, the car’s certificate of title was delivered to defendant and plaintiff notified defendant that plaintiff "elected * * * to stand upon” the previous notice of rescission and again demanded the return of the purchase price and stated that upon defendant notifying plaintiff "that the funds are available, we shall arrange to have the check and license plates picked up.” The car remains at defendant’s premises with plaintiff’s license plates apparently still on it.
Issues are raised concerning (1) the condition of the car, (2) the warranties made and their breach, (3) the recovery of the purchase price as a remedy upon a breach of warranty, (4) the *101 recovery of the purchase price by plaintiff, and (5) the jurisdiction of this court to direct the recovery of the purchase price.
1. THE CONDITION OF THE CAR
Defendant’s service manager testified concerning the condition of the car. He claimed that defendant had put another engine in the car when it was returned the first time; that the car had some minor defects which were repaired; and that the car is now in good order with no defects. Plaintiff’s mechanic, who had examined the car during the first week of May, 1976, testified that there were large amounts of oil spread over the engine; that the engine would not start; and that he made a compression test and found that the compression was so low as to make the car inoperable. He further testified that this low compression indicated that something was wrong with the engine but that he did not know exactly what was wrong since this could only be determined by removing the engine which, because of the expense involved, was not done.
Based upon the testimony concerning the breakdowns of the car and the attendant oil leaks, and buttressed by the testimony of plaintiff’s mechanic, the court finds that the engine was defective when the car was sold by defendant to plaintiff, that the engine subsequently installed by defendant was defective and that the car was inoperable each time it was towed to defendant’s premises.
The court notes defendant’s argument to the effect that plaintiff did not prove that there was a defective engine because plaintiff submitted no proof at all concerning any defect in the first engine and that, with respect to the replacement engine, plaintiff’s mechanic did not determine what was wrong with it. However, the determination made by plaintiff’s mechanic, which the court accepts, concerning the low compression of the replacement engine and the inability to start that engine which was covered with large amounts of oil, is sufficient to support a finding that the replacement engine was defective.
Even in the absence of expert testimony and even without proof of a specific defect, the testimony presented by other witnesses concerning the breakdowns and the oil leaks, supports a finding that the car was defective when sold and was still defective after the replacement engine was installed.
The court in Jackson v Melvey (56 AD2d 836, 837), a *102 personal injury action sounding in negligence and involving a third-party claim of breach of warranty, declared: "As noted by the Court of Appeals in the leading case of Codling v Paglia (32 NY2d 330), the plaintiff is not required to prove the specific product defect and his proof may be circumstantial in nature. Thus, the defect may be inferred from proof that the product did not perform as intended by the manufacturer. There was, in truth, expert testimony on both sides in the Codling trial with respect to an alleged specific defect in the power steering system of Paglia’s vehicle. However, it was only Paglia’s own testimony, as to his inability to steer the vehicle to the right, which the Court of Appeals recounted in upholding the jury finding of manufacturer liability, since proof of a specific defect was not required. At bar, the Melvey vehicle was only three weeks old at the time of the accident and, more importantly, had concededly been brought back to the dealer with a complaint of a steering problem only one week after its purchase. These facts alone present a far stronger case than Codling, for Paglia’s vehicle was four months old at the time of his accident and there had been no prior steering difficulties.” (See, also, Swensson v New York Albany Despatch Co., 309 NY 497; Markel v Spencer, 5 AD2d 400, affd 5 NY2d 958; but cf. Curtis v Fordham Chrysler Plymouth, 81 Misc 2d 566, 568.)
The fact that this is not a personal injury action or what is generally called a products liability action is not significant. This action is one for breach of warranty presenting the question of whether a product — the engine of a car — was defective. The breakdown of the car a few weeks after its sale to plaintiff, particularly when the engine had been losing large amounts of oil, supports a finding that the engine was defective when sold. The second breakdown, again with the loss of large amounts of oil, this time only a few days after defendant installed a replacement engine, even more readily supports a finding of a defective engine.
2. THE WARRANTIES MADE AND THEIR BREACH
The contract of sale on defendant’s form dated February 28, 1976 states in paragraph 7: "It is expressly agreed that there are no warranties, express or implied, made by either the dealer or the manufacturer on the motor vehicle, chassis or parts furnished hereunder.” The bill of sale on defendant’s form dated March 5, 1977 has stamped on it the statement *103 "Limited Used Car Warranty” without further explanation. In another one of defendant’s forms entitled "One Year Mechanical Guarantee” dated March 9, 1976 (referred to as a warranty in testimony given by defendant’s service manager) and signed by both parties, defendant "agrees that it will protect the purchaser from any cost of repairs other than normal maintenance and wear on the vehicle * * * during the term of this guarantee for one repair or replacement on each of the specified parts, subject to the terms and conditions hereinafter set forth: A. Engine * * * This guarantee is only valid for a mechanical failure. This does not cover normal wear.” While this paper further states that "You have the finest guarantee on your car that is offered anywhere in the world” and also states that this is defendant’s "famous one-year mechanical guarantee on parts and labor. This guarantee guards you against unforseen [sic] costly repairs on your car for one full year”, it contains many exclusions and conditions including one stating that the limit of liability for loss shall not exceed "either (1) the actual cash value of the vehicle at the time of loss or (2) the reasonable value of the repair or replacement including labor thereon” and another stating that defendant "assumes no liability whatsoever except for the terms of the guaranteed [sic] as expressly stated herein. Representatives or agents of Sportscar Salon, Ltd., are not authorized to amend or change either verbally or in writing the terms and conditions of this guarantee.”
Defendant does not rely on the express denial of warranties as set forth in the contract of sale. It could hardly do so since the subsequent bill of sale it issued declares that there is a "Limited Used Car Warranty” and the "Guarantee” makes what defendant itself regards as certain warranties. Indeed, as already noted, defendant’s service manager in his testimony referred to warranties made with respect to the car. Considering the fact that these papers were forms prepared by defendant, any ambiguity concerning their interpretation must be construed against defendant and in favor of plaintiff. (Matter of Goldfield Corp. v General Host Corp., 29 NY2d 264, 272; Rentways, Inc. v O'Neill Milk & Cream Co., 308 NY 342, 348.) This is particularly true with respect to a "contract of adhesion” (Eagle Star Ins. Co. v International Proteins Corp., 45 AD2d 637, 639, affd 38 NY2d 861 such as is involved here. The court finds, after consideration of the language used in the papers in question, which were prepared by defendant, that *104 defendant warranted that the engine was not defective. (See Uniform Commercial Code, § 2-313.)
Moreover, the impact of article 2 of the Uniform Commercial Code must be considered. Although the car was not purchased for any particular purpose (Uniform Commercial Code, § 2-315), so that the implied warranty of fitness for a particular purpose does not come into play, consideration must be given to the more general implied warranty of merchantability found in section 2-314 of the Uniform Commercial Code which states: "(1) Unless excluded or modified (§ 2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. * * * (2) Goods to be merchantable must be at least such as * * * (c) are fit for the ordinary purposes for which such goods are used”. "Goods” includes a car (Uniform Commercial Code, § 2-105) and defendant, a car dealer, is a merchant with respect to the car. This implied warranty of merchantability, then, is applicable (Luther v Bud-Jack Corp., 72 Misc 2d 924, 926-927) unless excluded or modified in accordance with section 2-316 of the Uniform Commercial Code which contains the following language:
"(2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous * * *
"(3) Notwithstanding subsection (2) (a) unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like 'as is’, 'with all faults’ or other language which in common understanding calls the buyer’s attention to the exclusion of warranties and makes plain that there is no implied warranty”.
There is no mention of the word "merchantability” in any of the papers involved in this case. Therefore, the implied warranty of merchantability remained in effect by virtue of subdivision (2) unless subdivision (3) came into effect. The phrases quoted in subdivision (3) were not used in the various papers involved, and while the contract of sale had an inconspicuous disclaimer of all warranties in paragraph 7, under the circumstances of this case, where the contract of sale was followed by the bill of sale and guarantee indicating that there were in fact some warranties, this disclaimer was ineffective. Accordingly, the implied warranty of merchantability *105 is applicable to the sale of this car. (See Zicari v Harris Co., 33 AD2d 17, 23; Dennin v General Motors Corp., 78 Misc 2d 451, 452; Minikes v Admiral Corp., 48 Misc 2d 1012.)
The court finds that by virtue of the defective engine in the car, defendant breached the express warranty relating to the engine as set forth in the "Guarantee” and also breached the implied warranty of merchantability in that the car, with that defective engine, was not fit for driving — the ordinary purpose for which it was to be used.
3. THE RECOVERY OF THE PURCHASE PRICE AS A REMEDY UPON A BREACH OF WARRANTY
Defendant contends that under no circumstances can plaintiff recover the purchase price. It contends that its obligation was limited to the repair and replacement of defective parts and that it satisfied this obligation by replacing the car’s engine.
The buyer’s remedies in general are set forth in section 2-711 of the Uniform Commercial Code which includes the following language which may be applicable to the situation presented in this case: "Where * * * the buyer * * * justifiably revokes acceptance then with respect to any goods involved * * * the buyer may cancel and whether or not he has done so may in addition to recovering so much of the price as had been paid”. Thus, if plaintiff justifiably revoked acceptance, she may be in a position to recover the purchase price under section 2-711 of the Uniform Commercial Code. However, in determining whether plaintiff is entitled to this relief —assuming a justifiable revocation of acceptance — consideration must be given to any attempt to limit or modify remedies in accordance with subdivision (4) of section 2-316 of the Uniform Commercial Code which states: "Remedies for breach of warranty can be limited in accordance with the provisions of this Article on liquidation or limitation of damages and on contractual modification of remedy (Sections 2-718 and 2-719).” Section 2-719 of the Uniform Commercial Code entitled "Contractual Modification or Limitation of Remedy”, states in subdivisions (1) and (2) as follows:
"(1) Subject to the provisions of subsections (2) and (3) of this section * * *
"(a) the agreement may provide for remedies in addition to or in substitution for those provided in this Article and may *106 limit or alter the measure of damages recoverable under this Article, as by limiting the buyer’s remedies to return of the goods and repayment of the price or to repair and replacement of non-conforming goods or parts; and
"(b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.
"(2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Act.”
An examination of the language used in the express warranty reveals that while reference is made to "repairs” and "replacement”, it is not "expressly agreed” that plaintiffs remedy was limited to repair and replacement. Indeed, the language used is in terms of limitation of "liability” rather than in terms of limitation of "remedies”. As pointed out in paragraph 2 of the official Comment to section 2-719 of the Uniform Commercial Code: "Subsection (1) (b) creates a presumption that clauses prescribing remedies are cumulative rather than exclusive. If the parties intend the term to describe the sole remedy under the contract, this must be clearly expressed.” (McKinney’s Cons Laws of NY, Book 62½, p 691.)
Accordingly, the court concludes that the remedy of "repair and replacement” is not exclusive and that the remedy permitting the recovery of the purchase price is available to plaintiff.
“Moreover, the court notes that in the beginning of the "Guarantee” there is a provision for "one repair or replacement” of the engine. In this case, there was a repair and replacement which still left the car with a defective engine. Even if the "Guarantee” were effective in limiting plaintiffs remedy to repair and replacement, under these circumstances such an exclusive or limited remedy failed "of its essential purpose”, and under subdivision (2) of section 2-719 of the Uniform Commercial Code any "remedy may be had as provided in this Act.” Indeed, under the circumstances of this case, if plaintiffs remedy were to be limited to "one repair or replacement” of the engine, such a limitation might very well be unconscionable. (See Uniform Commercial Code, § 2-302; cf. Zicari v Harris Co., 33 AD2d 17, 24, supra.) Further, even if the language in the "Guarantee” as well as in the contract of sale and bill of sale are regarded as ambiguous, this language *107 appears in forms prepared by defendant and any such ambiguity is to be resolved against defendant. (Matter of Goldfield Corp. v General Host Corp., 29 NY2d 264, 272, supra; Rentways, Inc. v O’Neill Milk & Cream Co., 308 NY 342, 348, supra; Eagle Star Ins. Co. v International Proteins Corp., 45 AD2d 637, 639, affd 38 NY2d 861, supra.)
Also, as observed in Part 2 hereof, there is, in addition to the express warranty, the implied warranty of merchantability. Since there has been no mention of merchantability in the papers prepared by defendant, there may be no limit on the remedy available to plaintiff — who seeks to recover the purchase price — by reason of the breach of the implied warranty of merchantability. (Zicari v Harris Co., 33 AD2d 17, 23, supra; Dennin v General Motors Corp., 78 Misc 2d 451, 452, supra.)
4. THE RECOVERY OF THE PURCHASE PRICE BY PLAINTIFF
Having determined that the recovery of the purchase price is a remedy open to the plaintiff, it must be determined whether plaintiff is entitled to recover the purchase price. As noted in Part 3 hereof, in order for plaintiff to enforce the available remedy of the recovery of the purchase price, it was necessary that she be in a position where she "justifiably revokes acceptance”. In view of the defective condition of the car as found in Part 1 hereof, any revocation of acceptance would be justifiable. It must then be determined whether plaintiff did in fact revoke her acceptance of the car.
This involves the consideration of section 2-608 of the Uniform Commercial Code which reads as follows:
"(1) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it
"(a) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or
"(b) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller’s assurances.
"(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.
*108 "(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.” The car, with its defective engine which rendered it inoperable, was a "commercial unit” (see Uniform Commercial Code, § 2-105, subd [6]) "whose non-conformity substantially impairs its value”. Plaintiff accepted it within the meaning of paragraph (b) of subdivision (1) of section 2-608 of the Uniform Commercial Code. Plaintiff, an ordinary purchaser of a car, did not know of the defective engine when she accepted the car and this defect could not be readily discovered by her at the time of purchase — aside from the fact that defendant assured her concerning the good condition of the car. The car broke down the first time on April 12, 1976 and revocation of acceptance was made eight days later on April 20, 1976. This revocation was made within a reasonable time, particularly in light of the discussions had during that period. Also, paragraph 3 of the conditions of the "Guarantee” required that no action shall lie against defendant unless it "shall have been given up to seven days from the date of first notice to effect inspection and arrange for appointment to repair vehicle.” After the car had been redelivered to plaintiff and again broke down, plaintiff within a few days informed defendant that she "elected * * * to stand upon the notice of rescission”. While section 2-608 of the Uniform Commercial Code uses the words "revocation of acceptance” rather than rescission, the use of the word "rescission” in the notices sent to defendant was sufficient. (See Official Comment, McKinney’s Cons Laws of NY, Book 62½, Uniform Commercial Code, § 2-608, p 517.) The car and the certificate of title, which were delivered to defendant, together constituted a complete tender of ownership. (See Luther v Bud-Jack Corp., 72 Misc 2d 924, supra; Carretta v Bud Jack Corp., 64 Misc 2d 689, 691; cf. Curtis v Fordham Chrysler Plymouth, 81 Misc 2d 566, 569, supra; see, also, Garfinkel v Lehman Floor Covering Co., 60 Misc 2d 72, 73.) That plaintiff’s license plates remained on the car, did not affect defendant’s ability to sell the car. The notice of May 6, 1976 advised defendant that when "the funds are available, we shall arrange to have the check and license plates picked up.” Defendant was in a position at all times after May 6, 1976 to have the license plates removed and, if it chose, to sell the car. (See Curtis v Fordham Chrysler Plymouth, supra, p 568.) Accordingly, plaintiff is entitled to recover the purchase price.
*109 5. THE JURISDICTION OF THIS COURT TO DIRECT THE RECOVERY OF THE PURCHASE PRICE
Defendant contends that this is an action in equity for rescission and that since this court does not have jurisdiction of such an action, it must be dismissed. Defendant completely misunderstands the nature of this action. It is not an action in equity for rescission. This is an action at law to recover the purchase price, a remedy available to plaintiff as demonstrated in Parts 3 and 4 hereof, following a justifiable revocation of acceptance. (Uniform Commercial Code, § 2-711; Carretta v Bud Jack Corp., supra.) While, as noted in Part 4 hereof, plaintiff uses the term "rescission” rather than "revocation of acceptance” in the notices sent to defendant, this is not significant.
Moreover, even under the law prior to the Uniform Commercial Code, where, in an appropriate case, a buyer elected to rescind the contract of sale and recover the purchase price (Personal Property Law, § 150, subd 1, par [d]), such an action to recover the purchase price was not regarded as an action in equity. (John Berg, Inc. v Associated Spinners, 201 Misc 627; see, also, Youngman v Smadbeck, 64 Misc 60.)
This court has jurisdiction over this action.
CONCLUSION
Judgment is directed in favor of plaintiff against defendant for the sum of $2,688 with interest from May 6, 1976.