OPINION OF THE COURT
Frank M. Klinger, J.
Plaintiff in this action purchased a car from the defendant. The circumstances involved in negotiating the purchase do not appear to be particularly unusual or extraordinary. The salesman, Doug Waterbury, who in his testimony describes himself as “a very enterprising young man”, apparently did a good job of selling a truck to the plaintiff. It certainly could not even be claimed by the plaintiff that the salesman Waterbury’s claimed conversation or tactics were in any way fraudulent, unconscionable or out of the ordinary for a used car salesman, with the possible exception of the alleged remark that if the plaintiff was not satisfied with the truck, he “could give it back”. Such a remark even if made, is excluded by the parol evidence rule.
The parties reduced their agreement to writing and a written contract was signed. The front of this contract in bold letters states “no warranty, as is!” An additional term of the agreement states: “5. Disclaimer of Warranties. I UNDERSTAND THAT YOU EXPRESSLY DISCLAIM ALL WARRAN *226 TIES, EITHER EXPRESSED OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OR MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE AND THAT YOU NEITHER ASSUME NOR AUTHORIZE ANY OTHER PERSON TO ASSUME FOR YOU ANY LIABILITY IN CONNECTION WITH THE SALE OF THE VEHICLE, except BS otherwise provided in writing by you in an attachment to this Agreement or in a document delivered to me when the vehicle is delivered.”
The front of the agreement states that the customer will take the vehicle on condition it is inspected, the rattle checked and his loan approved.
There is no dispute as to the fact that the truck was inspected and the plaintiff’s loan was approved. Mr. Waterbury testified that the rattle was checked, proved to be a problem with the shock absorber, which was tightened and fixed, and that the rattle was not present when the plain- - - tiff finally picked up the vehicle. The plaintiff claims the rattle was present when he picked up the vehicle. He, nonetheless, according to him (in literal contradiction to the terms of the contract) took the vehicle.
It is elementary hornbook law that, absent fraud, the parties to a written agreement are bound by the written terms of their agreement. The court will not rewrite a contract freely entered into by the two parties — even if the contract may be grossly favorable or unfavorable to either party. (See Simpson, Contracts [2d ed], pp 1-7, 86-88.)
“The fairness of an agreed exchange is legally irrelevant. The law will not inquire into whether the price exacted for the promise is inadequate in value to the performance promised, so long as it has some value.” {Id., p 86; emphasis added.)
Moreover the common law was codified and particularized by section 2-316 of the Uniform Commercial Code which states in pertinent part that “all implied warranties are excluded by expressions like ‘as is’, ‘with all faults’ or other language which in common understanding calls the buyer’s attention to the exclusion of warranties and makes plain that there is no implied warranty”.
*227 The plaintiff’s claim further appears doomed by subdivision (1) of section 2-302 of the Uniform Commercial Code which states as follows: “(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.”
At this point in time it would seem that even a first-year law student would be certain that the plaintiff could not possibly have any cause of action for breach of contract or rescission.
In fact, however, plaintiff testified — and it was not disputed — that he was only able to drive the vehicle three blocks to his house when the vehicle “broke down”. The plaintiff called the defendant. The defendant came and got the truck started and brought it back to the defendant’s shop where it still remains. The plaintiff wishes to reject the item and rescind the contract altogether. The question is whether he has the right to such rejection.
Were we permitted to rewrite or simply ignore the parties’ contract, we might readily agree that such a result would certainly not be unjust or unconscionable. The plaintiff only drove the truck for three blocks and its return by him to the defendant, together with the return by the defendant to the plaintiff of the purchase price, would be an equitable result.
Courts, however, are not permitted to ignore or destroy contracts merely to accomplish an equitable result. To do so would be to nullify hundreds of years of contract law, and to deprive the parties of the rights and benefits they deserve when they freely enter into agreement with each other. By putting the terms of their agreements in writing, parties insure that their intentions will be carried out. If a court can simply destroy a valid written contract “to do equity”, there would be little purpose in making a contract and the parties would never be able to know with certainty what their rights and obligations are.
The plaintiff’s only legal claim pursuant to this contract against the defendant is that the vehicle breached the *228 implied warranty of merchantability. To make this claim, plaintiff must establish that the “no warranty, as is” provisions are unconscionable. They cannot be unconscionable per se — they are specifically provided for by statute. Plaintiff’s only claim, therefore, can be that they are unconscionable under these particular circumstances.
The contract in the case at bar clearly does not appear to be unconscionable when made (Uniform Commercial Code, § 2-302, subd [1]) — only by resort to subsequent facts does the apparent unconscionability appear.
Inasmuch as neither party provided any memorandum of law to the court, the issue could simply have been left at that point.
The court, however, has found as an annotation to section 2-302 of the Uniform Commercial Code the case of Industralease Automated & Scientific Equip. Corp. v R.M.E. Enterprises (58 AD2d 482). There the defendant entered into a written agreement providing for no warranties and specifically disclaiming any warranty, expressed or implied. The manner in which this agreement was obtained was subject, according to the court, to “procedural unconscionability”, but inasmuch as the Appellate Division, Second Department, specifically indicated that both procedural and substantive unconscionability were present, we proceed to the latter.
The essence of the court holding was that
“Although the statute prescribes that we are to determine unconscionability as of the time of the making of the contract (Uniform Commercial Code, § 2-302), we cannot divorce entirely the events which occur later. In this case, the evidence plainly establishes that the equipment did not work at all, that it achieved none of the purposes of the parties. This is a result so ‘one-sided’, in the words of the authors of the Official Comment to the Uniform Commercial Code, that the disclaimer in good conscience should not be enforced. In effect the equipment was worthless (see Vlases v Montgomery Ward & Co., 377 F2d 846, 850).
“We therefore hold that the disclaimer of warranties is unconscionable under the circumstances and may not be *229 enforced.” (Industralease Automated & Scientific Equip. Corp. v R.M.E. Enterprises, 52 AD2d 482, 490.)*
The case at bar can be analogized to Industralease (supra) in that the purchaser was not an equal in terms of knowledge of the product or bargaining power with the seller and was made to sign the contract provided to him by the seller — although he did, in fact, add in the language that he wished.
The case at bar can be distinguished from Industralease (supra) in that in the latter case the Appellate Division indicated that (p 489) “The atmosphere of haste and pressure on the defendants is clearly pervasive”, and in that in Industralease the seller undertook to meet a necessity arising in the purchaser’s business and specifically undertook to design and build equipment to achieve certain desired results, in particular to produce certain “clean air” nonpolluting industrial equipment.
The biggest distinction, however, between the case at bar and Industralease (supra) is that in the latter, the equipment never worked and despite the seller’s repeated efforts to fix the equipment, it simply would not work, and was therefore “worthless”. In the case at bar, the defect, apparently according to Mr. Waterbury, the problem with the fly wheel seems clearly to be repairable — the only question being whether the defendant will repair it and who is going to pay for the repair.
If the vehicle is totally irreparable and/or the defendant simply refuses to repair it, then the case at bar is indistinguishable in its main element from Industralease (supra) — namely, the plaintiff, through no apparent fault of his own, will achieve no use or value whatsoever from the merchandise.
It is true that if the vehicle failed substantially to conform to the contract, the buyer within a reasonable time after delivery of the goods, would have the right to reject immediately and “[have] no further obligation with regard to goods rightfully rejected.” (Uniform Commercial *230 Code, §§ 2-601, 2-602.) However, the plaintiff’s only claim here is unconscionability. Unconscionability must be determined in its total context.
This court declines to ignore the specific provisions of section 2-302 of the Uniform Commercial Code which seem to require the stopping of the clock on the transaction at the time the agreement was made, but then “stop the clock” at the point in which the truck did not run and make our decision based solely upon the situation at that point. The Appellate Division in Industralease (supra) did not “stop the clock” at the original breakdown — but looked beyond to the point where it was established that equipment would never work.
We certainly cannot say as a matter of law that despite the clear contents of a written agreement, any sale of a used car is rendered null and void because the car has a mechanical breakdown sometime, even as close as five minutes, subsequent to the time it is picked up by the purchaser.
Legally there are no simple solutions. The court, however, has determined to follow the language of subdivision (1) of section 2-302 of the Uniform Commercial Code and “so limit the application of any unconscionable clause as to avoid any unconscionable result”.
Were the defendant to repair the vehicle for the plaintiff, the cost to be borne by the defendant, and to return said vehicle in workable condition to the plaintiff, we will have avoided any unconscionable result.
We are aided by the fact that the matter, despite the appearance of attorneys, is still in Small Claims Court. Section 1804 of the Uniform City Court Act states that: “The court shall conduct hearings upon small claims in such manner as to do substantial justice between the parties according to the rules of substantive law and shall not be bound by statutory provisions or rules of practice, procedure, pleading or evidence, except statutory provisions relating to privileged communications and personal transactions or communications with a decedent or mentally ill person.”
It is therefore ordered that the defendant shall within 10 days of the signing of this decision and order, turn the *231 subject vehicle over to the plaintiff in working, operable and merchantable condition, at no additional cost to the plaintiff. The plaintiff may pick up said vehicle at. the defendant’s dealership.
It is further ordered that the matter is set down for further proceedings on Wednesday, January 20, 1982. At that time the plaintiff is given leave to show cause, if any, before this court why the afore-mentioned vehicle is not merchantable or workable.
Any failure to comply with the afore-mentioned orders can, of course, result only in a judgment being granted to either party within the legal limits.
The court’s ultimate decision and order, including questions relating to the plaintiff’s incidental expenses and costs will abide the January 20, 1982 hearing.

 For other discussions of unconscionability, see Rowe v Great Atlantic & Pacific Tea Co. (46 NY2d 62, 67-68); Matter of Friedman (64 AD2d 70,85); Central Budget Corp. v Sanchez (53 Misc 2d 620, 621-622); Matter of Young (81 Misc 2d 920); Stream v Sportscar Salon (91 Misc 2d 99).