473 P.2d 932

Terry JEPHSON, by his guardian ad litem Robert Jephson, and Robert Jephson, individually, Plaintiffs-Appellants,

v.

Theresa Louise AMBUEL, Defendant-Respondent.

No. 10479.

Supreme Court of Idaho.

Aug. 21, 1970.

Albaugh, Bloem, Smith & Pike, Idaho Falls, for appellants.

Petersen, Moss & Olsen, Idaho Falls, for appellee.

McQUADE, Justice.

Plaintiffs-appellants Terry Robert Jephson and his father, Robert Jephson, as guardian and individually, brought this action in the district court alleging that Terry Jephson (hereinafter sometimes referred to as appellant) had been injured as the result of negligence on the part of defendant-respondent Theresa Louise Ambuel. Respondent answered denying negligence and pleading the affirmative defense of contributory negligence. Upon submission of several affidavits and the depositions of appellant and respondent, the district court granted respondent's motion for summary judgment. This order was based upon the conclusion that all of the evidence offered by both parties indicated that respondent was not negligent as a matter of law. The trial court also held that appellant had been contributorially negligent. The Jephsons have appealed from the summary judgment.

On July 16, 1967, respondent, who was proceeding westward on the South Idaho Falls Interchange between US–191 and I–15, struck the appellant with her car. Appellant had been driving a motorcycle ahead of respondent and was traveling in the same direction as respondent. The collision occurred in the eastbound lane of the highway. The brakes on respondent's automobile were in good working order and there were 156 feet of skid marks left by her vehicle. The road was hard-surface and dry, and the accident occurred in the afternoon of a sunny day. A state trooper, trained and experienced in the investigation of automobile accidents, concluded that, based on the conditions of the road, the quality of respondent's brakes, and the length of the skid marks, there was no indication that the respondent had been traveling faster than fifty-five miles per hour.

Both appellant and respondent were alone at the time, and there were no other eyewitnesses to the accident. Appellant has no recollection of any occurrences, including the accident, for a five week period beginning in the morning of July 16, 1967.

In her deposition, taken in September, 1968, in Idaho Falls, respondent gave the following account of the collision. She was wearing her glasses on a sunny day and she was well rested. Her car was in good repair, and the road was dry and in good condition. Both she and the appellant were proceeding in a westerly direction on a two-lane, two-way highway. There was no other traffic. Her speed was between fifty-five and sixty miles per

hour, somewhat faster than that of appellant. When she first noticed appellant, they were four to five hundred feet apart. She removed her foot from the accelerator, in preparation for passing and her car slowed slightly as she approached appellant. When they were approximately 140 to 150 fet apart, the motorcycle and rider began to "zig-zag" and waver as if out of control. Respondent then sharply applied her brakes and her car swerved into the left lane. When the two vehicles were only fifteen to twenty feet apart, the motorcycle suddenly turned into respondent's path and she hit it "broadside" with the right front end of her car. Respondent has no recollection of using her horn, and she said that she did not have time to do so. Respondent estimated that, when she began braking her automobile, her speed was 45 to 50 m. p. h., and that when she struck appellant she had slowed to 20 or 25 m. p. h. The collision occurred approximately four or five feet from the center line in the eastbound lane of the highway. Respondent immediately halted her vehicle and hailed passing motorists, and several people stopped. Five or ten minutes after the accident Philip Jordin, appellant's cousin, appeared and at some time thereafter respondent spoke with him. Respondent testified that she did not speak with appellant's aunt and uncle who were also at the scene.

In her affidavit in support of her motion for summary judgment, respondent said that she saw no hand signal or attempt to look around or behind on the part of the driver of the motorcycle. She also said, and it is not disputed, that there was no intersection within 500 feet of the point of impact, nor were there any private driveways leading onto the highway at the place of the collision. There are no inconsistencies of substance between respondent's deposition and her affidavit.

In his affidavit, Philip Jordin reported that the respondent told him "I don't know how it happened, it was so fast, all I know is I hit him and it was my fault" at the accident scene at least ten minutes after the collision occurred. He also said that respondent called him several days later and again told him that it was her fault. He also said that the motorcycle appeared to have been hit in the rear.

Faye Jordin, appellant's aunt, said, in her affidavit, that, after she had arrived at the accident site, she asked respondent "who hit him?" Respondent is said to have answered, "I did; I didn't see him."

Ronald Hoodenpyle, one of the investigating state police officers, said, in his affidavit, that the respondent had not told him that she was going to pass the appellant, that the motorcycle had swerved to the left and turned broadside in the front of her when they were fifteen or twenty feet apart, or that the appellant had failed to look behind him. Officer Hoodenpyle also said that the respondent's automobile appeared to have struck the left rear portion of the motorcycle.

Terry Jephson's deposition sheds no light on either of the issues of his own or respondent's negligence, because he has absolutely no recollection of any of the circumstances of the accident.

Appellant has questioned the finding of the trial court that there was no evidence of respondent's negligence and the finding that Terry Jephson was contributorially negligent as a matter of law. We hold that the first of these findings was correct, and, therefore, we do not reach the second issue of appellant's negligence.

Appellant contends that the statements which Philip Jordin and Faye Jordin say that Theresa Ambuel made to them, as heretofore quoted, raise a genuine issue as to a material fact and that summary judgment should not, therefore, have been granted. We do not agree with this contention.

■ We have held that, in order for there to be a "genuine issue as to any material fact" as that expression is used in Idaho R.Civ.P. 56(c),[1] there must be more

1. *"Motion for summary judgment and proceedings thereon.*—The motion shall be served at least ten (10) days before the time fixed for the hearing. The adverse

than the mere slightest doubt as to the facts to forestall summary judgment.[2] A mere scintilla of evidence will not create an issue under Idaho R.Civ.P. 56(c); there must be evidence upon which a jury could rely.[3] This Court has held, therefore, that a summary judgment should be granted if the posture of the evidence before the court on the motion would warrant a directed verdict if the case were to go to trial.[4] We must determine whether, if appellant's aunt and cousin had asserted in testimony at trial that respondent had made the statements attributed to her, those assertions would have been enough when placed with the other evidence offered in this action to take the case to the jury.

■ The statements would be admissible at trial to establish facts relevant to substantive issues under the admissions of a party opponent exception to the hearsay rule.[5] Oral extra-judicial admissions constitute a class of evidence which is most subject to error and abuse. No matter how well intentioned and meticulous a witness might be, he may still, by an omission or slight change of wording, alter the original meaning of the party opponent being quoted; consequently such testimony should

be viewed with caution.[6] As a consequence it has been held that oral, extra-judicial admissions, opposed by substantial evidence and without corroboration, are not enough to carry a case to a jury without some other independent evidence on the principle question.[7]

A case which is particularly pertinent to this action is LaMoreaux v. Fosket, 45 Wash.2d 249, 273 P.2d 795 (1954). It involved a directed verdict in the favor of the defendant in an action for injuries to a small child. The Supreme Court of Washington stated that, in order to reverse the judgment on the directed verdict, there would have to be evidence of negligence. Three admissions on the part of the defendant to the effect that it had been carelessness on his part in not being more careful in looking before he started his car were the only evidence tending to establish his negligence. There was no eyewitness to the accident other than the defendant. The Washington Supreme Court held that "evidence of verbal declarations of the adverse party where there are no corroborating facts or circumstances, is not sufficient to sustain a verdict upon a vital issue." [8]

party prior to the day of hearing may serve opposing affidavits. *The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.* A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages. Such judgment, when appropriate, may be rendered for or against any party to the action." (Emphasis added.)

2. Petricevich v. Salmon River Canal Co., 92 Idaho 865, 871, 452 P.2d 362, 368 (1969); Tri-State Nat. Bank v. Western Gateway Storage Co., 92 Idaho 543, 546, 447 P.2d 409, 412 (1968).

3. 3 W. Barron A. Holtzoff, Federal Practice and Procedure § 1234, at 133 (C. Wright Rules Ed. 1958) cited in Petricevich v. Salmon River Canal Co., supra note 2.

4. Petricevich v. Salmon River Canal Co., supra note 2; see generally 3 W. Barron & A. Holtzoff, supra note 3; J. Moore, Moore's Federal Practice § 56.11 [3], at 2171 (2d ed. 1966).

5. E. g. Curtis v. Curtis, 58 Idaho 76, 70 P.2d 369 (1937); Judd v. Oregon Short Line R.R. Co., 55 Idaho 461, 44 P.2d 291 (1935).

6. In Re MacKenzie, 54 Idaho 481, 489–490, 33 P.2d 113 (1934); accord, Burnett v. Lemon, 185 Or. 54, 199 P.2d 910, 914 (1948); Peterson v. Wright, 183 Or. 223, 191 P.2d 645, 650 (1948); LaMoreaux v. Fosket, 45 Wash.2d 249, 273 P.2d 795, 802 (1954). A criminal conviction will not stand if supported by uncorroborated, extra-judicial admissions of the defendant; State v. Wilson, 51 Idaho 659, 669, 9 P.2d 497 (1932); State v. Downing, 23 Idaho 540, 544, 130 P. 461 (1913).

7. Larson v. Papst, 205 Or. 126, 286 P. 2d 123, 125 (1955); Burnett v. Lemon, supra note 6; Peterson v. Wright, supra note 6; LaMoreaux v. Fosket, supra note 6.

8. 273 P.2d 795, at 802.

794

Theresa Louise Ambuel's extra-judicial statements, as recounted by appellant's aunt and cousin, are not sufficient evidence to forestall the entry of summary judgment in this action. The two statements to Philip Jordin by respondent to the effect that she was "at fault" were merely conclusions; they provide no factual particulars upon which a jury could predicate a finding of negligence. They indicated no acts or omissions on the part of the respondent which could be described as "negligent." A party is not bound by admissions of "fault" where there is no legal liability for actionable "fault" based on the evidence.[9] The only inferences of negligence which could be drawn from these statements would have to be the product of pure speculation, and a judgment should not be allowed to rest on speculation and conjecture alone.[10]

The statement which respondent is reported to have made to Faye Jordin is also insufficient to take the appellant's case to a jury. In response to appellant's aunt's query as to who had hit her nephew, respondent is alleged to have indicated that it had been she and that she, respondent, had not seen appellant. The first part of this statement simply states what is already known, that respondent's car hit appellant's motorcycle. The second half of the statement is not corroborated by any circumstance established by independent evidence, and no other person has asserted that he heard the statement. It is, furthermore, expressly contradicted by all other evidence in the case.[11]

These extra-judicial, oral admissions of an adverse party stand on a level much inferior to those involved in Curtis v. Curtis, 58 Idaho 76, 70 P.2d 369 (1937). That case held that an out-of-court statement by the defendant in a telephone conversation to the effect that she must have fallen asleep while driving was admissible and was a sufficient basis for a jury's verdict of neg-

ligence. The admission in that case was not a general conclusion of fault, nor was it a statement the meaning of which would suffer from a slight misquotation. No matter how stated, it served to establish a *fact* upon which a jury's conclusion of fault could rest, i. e., allowing oneself to fall asleep at the wheel. The statement in *Curtis* was heard and testified about by two people, one at the defendant's end of the phone conversation and one to whom the defendant spoke. Other, independent evidence existed which made the statements credible. It was shown that the defendant had been the only driver on a continuous day and night automobile trip which, at the time of the accident, was fourteen hours old. The automobile accident in *Curtis* was one involving a single car which ran off the road and into a tree, and there was no explanation for this unusual event other than that provided by the defendant's admission. And, finally, in that case the defendant testified that she did not remember what had happened, but that she was "very very tired" immediately before the accident because she had driven all night; she could offer no account at all of the accident itself. In that case, therefore, the admissions were more inherently credible and were of greater value to the fact-finder, than are those in this action. And the admissions in *Curtis* were supported by proof of extrinsic circumstances unavailable to appellant. *Curtis* is not authority for allowing the alleged extrajudicial statements of respondent to carry this action beyond respondent's motion for summary judgment.

Because we hold that there was not a showing sufficient to raise an issue with respect to the material fact of respondent's negligence, we affirm the district court's order entering summary judgment on behalf of respondent. Costs to respondent.

McFADDEN, C. J., and DONALDSON, SHEPARD and SPEAR, JJ., concur.

9. Hull v. Oklahoma City Baseball Co., 196 Okl. 40, 163 P.2d 982, 983 (1945).

10. *See* Petricevich v. Salmon River Canal, Co., *supra* note 2; Peterson v. Parry, 92 Idaho 647, 448 P.2d 653 (1968).

11. *See* Peterson v. Wright, *supra* note 6.