551 P.2d 1336

**FIRST PIEDMONT BANK AND TRUST COMPANY, Plaintiff-Respondent,**

v.

**James DOYLE, Defendant-Appellant.**

**No. 11956.**

Supreme Court of Idaho.

July 13, 1976.

James L. Kennedy, Jr., of Walker & Kennedy, Twin Falls, for defendant-appellant.

E. Lee Schlender, of Schlender & Young, Ketchum, for plaintiff-respondent.

SHEPARD, Justice.

This is an appeal from a summary judgment in favor of the plaintiff bank in an action it brought against James Doyle, the guarantor of the debts of Mecco Unlimited, a corporation.

In late 1971 and early 1972 appellant-defendant Doyle signed two unconditional guarantees for any debts Mecco might owe respondent-plaintiff bank up to an amount of $4,400. Thereafter the bank honored overdraft checks by Mecco totalling $1,376 and extended credit on Mecco's credit card account in the amount of $3,309. Mecco failed to pay bank upon demand and thereafter the bank brought this action against Doyle as guarantor in 1974.

Plaintiff bank moved for summary judgment on the basis of documents establishing the above facts. Doyle did not controvert those facts but instead interposed a defense of setoff. Doyle's documentation in opposition to the motion for summary judgment indicated that the original agreement establishing Mecco's checking account at the bank had included as authorized signators one Bozick, Mecco's then executive vice-president. On October 17, 1972, it is stated that Bozick's employment with Mecco was terminated, that one of the employees of the bank was advised of Bozick's termination of employment and the bank was requested to remove Bozick's name as an authorized signator on Mecco's checks. Some three weeks later on November 6, 1972, the plaintiff bank honored a check on Mecco's account for $20,000 payable to "Mechanical Blends System" and signed on behalf of Mecco by Bozick. In response thereto the bank furnished additional documentation asserting non-receipt of any advice of the employment termination of Bozick prior to the time it honored the check written by Bozick.

Summary judgment was granted plaintiff bank in the amount of the guarantee, $4,400, plus interest and costs. In essence, the trial court held that an oral request to strike the signature of an officer from a corporation's checking account signature card constituted a "stop payment order" within the meaning of I.C. § 28–4–403. That statute provides that oral stop payment orders are binding only for 14 calendar days and thereafter must be confirmed in writing. The court held that no genuine issue of material fact existed since the record revealed that the check in question was written and honored three weeks after the oral notice.

■ We hold that the district court erred in rendering its decision and ordering summary judgment on the basis of a "stop payment order." A stop payment order as the name suggests is a countermand to a previous *valid* order to draw money

from the depositor's account. See I.C. §§ 28–4–403(1), 28–4–104(1)(g); White & Summers UCC (2d ed. 1972) § 17–5, p. 577; Bailey, Brady on Bank Checks (4th ed. 1969), p. 345. The focus of a stop payment order is on the particular item or items drawn in favor of specific payees and concerns particular transactions but is not concerned with the drawer's *authority* to write the check. While the statutes deal with oral and written stop orders, ultimately a written order is required within 14 days following oral order. *See,* I.C. § 28–4–403, Comment 6; I.C. § 28–4–403(2), Comment 7; Hawkland, Stop Payment Orders Under the Commercial Code, 75 Commercial Law Journal 53 (1970).

Revocation of authority to execute checks is, however, not a countermand to a previous payment order and therefore not a stop payment order. It is rather a modification of the agreement between the bank and the depositor as to who is authorized to execute instruments for the purpose of drawing funds from the depositor's account.

■ Although a common sense approach would recognize the desirability of a written notice of termination of authority to execute instruments, such is not explicitly required under the Code. In the absence of such specific provision general rules of principle and agency are held to apply. I. C. § 28–1–103. Under the common law notice of termination of an agent's authority to act on behalf of a principle in the absence of a controlling contractual principle could be given orally. *See,* Restatement, Agency 2d, § 136(1)(a); Seavey, Law of Agency (1964) § 51F., p. 95. In the instant case, however, the agreement between the depositor Mecco and the bank required revocation of signator authority to be in the form of a written corporate resolution. On the other hand, "no agreement can disclaim a bank's responsibility for its own lack of good faith or failure to exercise ordinary care." I.C. § 28–4–103(1). Ordinarily, the controverted question of fact as to whether the bank did or did not receive the oral notice of withdrawal of signatory authorization would present a material issue of fact which would preclude summary judgment since there might be an issue as to the bank's failure to exercise ordinary care in the face of the oral revocation of signatory authority, albeit written revocation was required by the agreement. *See, Indianapolis Saenger Chor, Inc. v. Fletcher Nat'l Bank & Trust,* 149 Ind.App. 665, 274 N.E.2d 728 (1971); *Wagner Trading Co. v. Battery Park Nat'l Bank,* 228 N.Y. 37, 126 N.E. 347 (1920); *Susquehanna Lines v. Auditore,* 223 App. Div. 585, 229 N.Y.S. 181 (1928); *Bank of Giles County v. Fidelity & Deposit Co. of Maryland,* 84 F.2d 321 (4 Cir., 1936); *Farmers Bank of Alamo v. United States Fidelity & Guaranty Co.,* 28 F.2d 676 (5 Cir., 1928); *Gendler v. Sibly State Bank,* 62 F.Supp. 805 (D.C.1945).

■ Upon motion for summary judgment all factual issues must be resolved in favor of the non-moving party, as well as all reasonable inferences which may be drawn from said facts. IRCP 56(c); *Stoddard v. AID Ins. Co.,* 97 Idaho 508, 547 P.2d 1113 (1976); *Jacoby v. Capaldi,* 93 Idaho 39, 454 P.2d 602 (1969).

■ The record before us also demonstrates that the agreement between the bank and Mecco provided that Mecco would notify the bank within 14 days of receipt of an account statement which revealed any unauthorized signature and that in the absence of such notice, the statement would "conclusively be presumed correct." I.C. § 28–4–406(1) and (2). Further, we note that there is absolutely no showing in the record here that any loss or damage was suffered by Mecco because of the bank's honoring of the check signed by Bozick. We are urged to adopt the view that the facts before us give rise to an inference that Mecco was damaged by the bank's honoring of the Bozick's signed check. However, we are left with the bare facts before us. From appellant's interpretation of the facts, the Bozick signed check was honored on November 6, 1972, and

such should be construed as having damaged Mecco in the amount of $20,000. The record is devoid of any assertion or suggestion that Mecco made any demand against the bank as of October 1974. We therefore refuse to indulge in the inference sought by appellant.

It is true that the burden of proof on certain aspects of transactions covered by the UCC are placed with the banks. *Abramson v. First Nat'l City Bank*, 17 UCC Rep.Serv. 472 (N.Y.S.1975); *Movie Films, Inc. v. First Security Bank of Utah, N.A.*, 22 Utah 2d 1, 447 P.2d 38 (1968); *Independent Ins. v. First State Bank of Springdale*, 253 Ark. 779, 489 S.W.2d 757, 764 (1973). Those cases turn on facts substantially different and distinguishable from the case at bar. In some, forgery was involved or the lack of required signatures as set forth in the deposit agreement. In White and Summers, Uniform Commercial Code (2nd ed. 1972), § 17-4, p. 573, it is noted that the burden of proof of lack of damage or loss is on the bank when it *dishonors* a customer's check. The rationale therefore is stated "the primary reason for the recognition of this presumption is that wrongful dishonor renders the existence of some harm to the customer's credit and business standing *so probable* that it makes legal sense to assume the existence of such harm unless and until the adversary comes forward with some evidence to the contrary." (Emphasis supplied).

That rationale is not applicable to circumstances presented in the case at bar. The customer (Mecco) is not a party herein and as noted the record does not indicate that Mecco suffered any loss. Mecco has never complained of the "wrongful" honor of the Bozick check. There are no circumstances which can be said to make "legal sense to assume the existence of such harm." The burden of proof of alleging damage is otherwise in the areas of stop payment orders, I.C. § 28-4-403(3) and wrongful dishonor by mistake, I.C. § 28-4-402. *See also,* Wright and Miller,

Federal Practice and Procedure (1969), §§ 1249 and 1259.

 Therefore even assuming that the bank failed to exercise ordinary care in honoring and paying the check signed by Bozick, such action cannot constitute a set off defense available to Doyle as guarantor in the absence of an assertion and showing of resultant damage to Mecco. A party may not rest on its pleadings on a motion for summary judgment but must offer counter affidavits or other evidentiary material supporting his contention that an issue of fact remains. Wright and Miller, Federal Practice and Procedure (1973), § 2727, IRCP 56(e); Moore's Federal Practice, Vol. 6, ¶ 56.13[3], p. 485.

Affirmed. Costs to respondent.

McFADDEN, C. J., DONALDSON and BAKES, JJ., and HAGAN, District Judge, concur.