587 P.2d 816

John PECKHAM, Plaintiff-Appellant,

v.

LARSEN CHEVROLET–BUICK–OLDS-MOBILE, INC., a corporation, and General Motors Corporation, Defendants-Respondents.

No. 12687.

Supreme Court of Idaho.

Dec. 7, 1978.

Brent T. Robinson of Ling & Nielsen, Rupert, for plaintiff-appellant.

Bert Larson of Parry, Robertson, Daly & Larson, Twin Falls, for General Motors Corp.

Donald R. Workman of Goodman, Duff & Chisholm, Rupert, for Larsen Chevrolet etc.

SHEPARD, Chief Justice.

This is an appeal from a summary judgment in an action by plaintiff-appellant John Peckham seeking a rescission of a

contract under which he had purchased a new automobile from the defendant-respondents Larsen Chevrolet and General Motors. Summary judgment was entered in favor of defendants. We reverse on the basis that genuine issues of material fact remain for resolution.

Although the action was brought for "rescission," we treat it as one for revocation of acceptance under the Uniform Commercial Code. Peckham asserts that the action is not one for rejection of goods pursuant to I.C. §§ 28–2–601 and 28–2–602, and hence we decline to discuss the potential application of the remedy of rejection to a factual situation similar to that presented here.

On March 17, 1976, Peckham purchased a new automobile for the sum of $6,400.85, by entering into an installment sale and security agreement with Larsen Chevrolet. Later that same day the agreement was assigned by Larsen Chevrolet to First Security Bank of Idaho of Rupert, Idaho. The automobile was manufactured by General Motors and sold by Larsen Chevrolet, which is an authorized franchise dealer for General Motors.

Although General Motors contends it was not a party to the installment sale and security agreement, General Motors made an express written warranty as follows:

The Chevrolet dealer of the owner's choice will make any repairs on any part of the car, except tires made necessary because of defects in the material or workmanship for 12 months or 12,000 miles of use, whichever first occurs, from the date the car is delivered to the first retail purchaser or first placed in service as a demonstrator or company car, whichever is earlier, it will make any needed service adjustment during the first ninety days of use.

Warranty repairs and needed service adjustments will be performed without charge to the owner by the Chevrolet dealer at its place of business within a reasonable time after delivery of the car to the dealer.

During the first month and one-half after the purchase of the automobile, Peckham discovered that there was a dent in the hood, the gas tank contained no baffles, the emergency brake was inoperable, that the automobile did not contain a jack or spare tire, and that the clock and speedometer were inoperable. He asserts that despite repeated attempts to have those defects repaired, they were not finally completed until June 11, 1976. Larsen Chevrolet, on the other hand, argues that all of the alleged defects were known by Peckham at the time of purchase.

On July 15, 1976, a fire occurred in the dashboard of the automobile, resulting in damage to it and the carpeting, and also rendering the vehicle inoperable. Peckham has stated in an affidavit in opposition to the motion for summary judgment that the automobile was thereafter returned to Larsen Chevrolet and he informed Larsen Chevrolet that they had the responsibility of repairing the vehicle at their expense and otherwise he would either rescind the contract or demand a new automobile. There appears to have ensued a discussion relating to the damage from the fire being the responsibility of Peckham's insurance company. Peckham contends that at the conclusion of that discussion he orally informed Larsen Chevrolet that he was electing to rescind the contract and was demanding the return of the purchase price. Larsen Chevrolet denies having received that alleged oral notice of rescission.

Immediately following the fire, there were discussions between the First Security Bank of Idaho, Larsen Chevrolet and Peckham relating to the possible repossession of the automobile and the protection of Peckham's credit rating. On behalf of Larsen Chevrolet, it is argued that Peckham agreed to make additional payments on the contract, Larsen Chevrolet agreed to repurchase the automobile and thus the matter would not be reported as a repossession. Peckham asserts, however, that, while there were discussions, he, Peckham, nevertheless, informed the bank and Larsen Chevrolet of his intention to remain with his decision electing to rescind the contract.

Thereafter, Peckham received notice indicating the automobile had been repossessed and that it would be sold unless redeemed. Peckham did not redeem the automobile and evidently it was sold at a private sale. The record does not make clear when or how the damage from the fire was repaired, but it is asserted that such repairs were made at the expense of Peckham's insurance carrier. On October 12, 1976, Peckham's written notice of rescission was sent to Larsen Chevrolet and General Motors and Peckham's complaint was filed on January 26, 1977. Upon motion therefor, summary judgment in favor of Larsen Chevrolet and General Motors was granted by the district court. Peckham thereafter filed a motion for reconsideration and a motion to amend his complaint. Both motions were denied.

■ Sale of the automobile here is a sale of goods governed by Article 2 of the Uniform Commercial Code. I.C. § 28–2–711 sets forth in general a buyer's remedies.[1] It is provided therein that a buyer may cancel the contract if the seller's delivery is such that it gives the buyer a right to reject or a right to revoke acceptance of the goods.

■ As noted, this action was originally brought as one for "rescission" and Larsen Chevrolet and General Motors argue that because there is no provision in the Uniform Commercial Code for this remedy, it is unavailable to the buyer. The Code has, in most instances, abandoned the use of the term "rescission" in favor of terms such as "cancellation or termination." However, it has been held, and the commentators agree, that rescission and revocation of acceptance amount to the same thing under the Uniform Commercial Code, particularly since cancellation is a remedy available to a buyer who has established justifiable grounds for revocation of acceptance. I.C. § 28–2–711(1); *Werner v. Montana*, 378 A.2d 1130, 1135 (N.H.1977); *Testo v. Russ Dunmire Oldsmobile, Inc.*, 16 Wash.App. 39, 554 P.2d 349, 356 (1976); *Prince v. LeVan*, 486 P.2d 959, 962–63 (Alaska 1971); *Lanners v. Whitney*, 247 Or. 223, 428 P.2d 398, 403 (1967); Comment 1 to I.C. § 28–2–608; 2 R. Anderson, Uniform Commercial Code §§ 2–608:8, 2–711:19 (2d ed. 1971); J. White & R. Summers, Uniform Commercial Code, 248–249 (1972); 67 Am.Jur.2d, Sales, § 215. We, therefore, view and treat Peckham's action for "rescission" as one for "revocation of acceptance" under I.C. § 28–2–608. The principal issue in this case is whether Peckham has sufficiently established the elements necessary for a revocation of acceptance under I.C. § 28–2–608, so as to avoid a summary judgment in favor of the defendants.

Before a buyer may revoke acceptance under § 28–2–608, he must first show that the goods are nonconforming and that the nonconformity substantially impairs the value of the goods to the buyer. In that regard, it is provided:

28–2–608. Revocation of acceptance in whole or in part.—(1) The buyer may revoke his acceptance of a lot or commer-

---

1. 28–2–711. Buyer's remedies in general—Buyer's security interest in rejected goods.—(1) Where the seller fails to make delivery or repudiates or the buyer rightfully rejects or justifiably revokes acceptance then with respect to any goods involved, and with respect to the whole if the breach goes to the whole contract (section 28–2–612), the buyer may cancel and whether or not he has done so may in addition to recovering so much of the price as has been paid
  (a) "cover" and have damages under the next section as to all the goods affected whether or not they have been identified to the contract; or
  (b) recover damages for nondelivery as provided in this chapter (section 28–2–713).

(2) Where the seller fails to deliver or repudiates the buyer may also
  (a) if the goods have been identified recover them as provided in this chapter (section 28–2–502); or
  (b) in a proper case obtain specific performance or replevy the goods as provided in this chapter (section 28–2–716).
(3) On rightful rejection or justifiable revocation of acceptance a buyer has a security interest in goods in his possession or control for any payments made on their price and any expenses reasonably incurred in their inspection, receipt, transportation, care and custody and may hold such goods and resell them in like manner as an aggrieved seller (section 28–2–706).

cial unit whose nonconformity substantially impairs its value to him if he has accepted it

    (a) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or

    (b) without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

    (2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

    (3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.

Thereafter, if the buyer knew of the nonconformity when he accepted the goods, it is necessary that he show he acted with a reasonable assumption that the nonconformity would be cured, but that it was not seasonably cured. I.C. § 28–2–608(1)(a). If the buyer did not know of the nonconformity when he accepted, he must show that his acceptance was reasonably induced, either by the difficulty of discovering the nonconformity before acceptance or by the seller's assurances. I.C. § 28–2–608(1)(b); 2 R. Anderson, Uniform Commercial Code § 2–208:4 (2d ed. 1971). Finally, the revocation of acceptance by the buyer must occur within a reasonable time after the buyer discovers the defect or should have discovered it, and before any substantial change in condition of the goods which is not caused by their own defects. Such revocation of acceptance is not effective until the buyer notifies the seller. I.C. § 28–2–608(2).

■ It is well established that upon motion for summary judgment, all factual issues must be resolved in favor of the non-moving party, as well as all reasonable inferences which may be drawn from the facts. I.R.C.P. 56(c); *First Piedmont Bank and Trust Co. v. Doyle*, 97 Idaho 700, 551 P.2d 1336 (1976); *Stoddard v. AID Ins. Co.*, 97 Idaho 508, 547 P.2d 1113 (1976); *Jacoby v. Capaldi*, 93 Idaho 39, 454 P.2d 602 (1969).

■ Considering the requisite elements for a revocation of acceptance and the facts construed most favorably toward Peckham, a factual dispute exists as to whether Peckham orally notified Larsen Chevrolet of his desire to cancel or rescind the contract (revocation of acceptance) immediately following the fire. Such is denied by Larsen Chevrolet. Depending upon the resolution of that disputed fact, also unresolved is whether Peckham's alleged oral or written notice of cancellation of the contract took place within a reasonable time.

As explained by comment 4 to § 28–2–608(2) of the Uniform Commercial Code, revocation of acceptance is required within

    . . . a reasonable time after discovery of the grounds for such revocation. Since this remedy will be generally resorted to only after attempts at adjustment have failed, the reasonable time period should extend in most cases beyond the time in which notification of breach must be given, beyond the time for discovery of non-conformity after acceptance and beyond the time for rejection after tender. The parties may by their agreement limit the time for notification under this section, but the same sanctions and considerations apply to such agreements as are discussed in the comment on manner and effect of rightful rejection.

■ It would appear that no particular form or content of notice of revocation of acceptance is required if the notice is sufficient to inform the seller that the buyer has revoked and identify the particular goods as to which he has revoked. *See generally*, 2 R. Anderson, Uniform Commercial Code, § 2–608:16; *Stream v. Sportscar Salon, Ltd.*, 91 Misc.2d 99, 397 N.Y.S.2d 677 (1977); *Testo v. Russ Dunmire Oldsmobile, Inc., supra; Conte v. Dwan Lincoln-Mercury, Inc.*, 172 Conn. 112, 374 A.2d 144 (1976); *Hays Merchandise, Inc. v. Dewey*, 78

Wash.2d 343, 474 P.2d 270 (1970); *Lanners v. Whitney, supra.*

A further factual issue appears to remain regarding the conformity of the goods. Here there appears to be a dispute as to whether the goods were accepted by Peckham in a defective nonconforming condition or whether he accepted the goods upon assurance by the seller that the defects would be remedied. As stated by I.C. § 28–2–608, comment 2:

> [r]evocation of acceptance is possible only where the nonconformity substantially impairs the value of the goods to the buyer. For this purpose, the test is not what the seller had reason to know at the time of contracting; the question is whether the nonconformity is such as will in fact cause a substantial impairment of value to the buyer though the seller had no advance knowledge as to the buyer's particular circumstances.

An exhaustive discussion of what constitutes substantial impairment to a buyer is unnecessary since it is held each case must be examined on its own merits to determine what is a substantial impairment of value to the particular buyer. *Conte v. Dwan Lincoln-Mercury, Inc., supra; Tiger Motor Co. v. McMurtry,* 284 Ala. 283, 224 So.2d 638 (1969). Here, Peckham's statement by way of affidavits alleging the fire which was allegedly caused by defective wiring and the refusal of defendants to repair the damage raises an issue of material fact as to whether there had been a substantial impairment of value to Peckham. *See generally*: 2 R. Anderson, Uniform Commercial Code, 2–608:13 (2d ed. 1971); J. White & R. Summers, Uniform Commercial Code 253–266 (1972); D. Whaley, UCC's "TARR"-Baby, 24 Drake L.R. 52 (1974); *Durfee v. Rod Baxter Imports, Inc.,* 262 N.W.2d 349 (Minn.1977); *Conte v. Dwan Lincoln-Mercury, Inc., supra; Henry v. Don Wood Volkswagen, Inc.,* 526 S.W.2d 483 (Tenn.Ct.App. 1975); *Jacobs v. Metro Chrysler-Plymouth, Inc.,* 125 Ga.App. 462, 188 S.E.2d 250 (1972); *Tiger Motor Co., Inc. v. McMurtry, supra.*

In light of all of the above, we find that genuine issues of material fact remain for resolution and hence summary judgment was inappropriate.

As to General Motors, it is argued that there was no privity of contract between them and Peckham, and that such lack of privity precludes an action on implied warranty and hence summary judgment was appropriate as to General Motors. We note first the existence of what is apparently General Motors' express written warranty. Although Peckham apparently does not dispute the issue of privity as to any implied warranties, he contends that a factual issue remains as to whether Larsen Chevrolet acted in the instant circumstances as an agent for General Motors, which would in turn give rise to privity of contract between Peckham and General Motors. *See generally, Robinson v. Williamsen Idaho Equipment Co.,* 94 Idaho 819, 498 P.2d 1292 (1972). We do not see the record here as indicating the exact nature of the relationship between Larsen Chevrolet and General Motors, and hence agree that such also remains a genuine issue of material fact. *See generally, Clark v. Gneiting,* 95 Idaho 10, 501 P.2d 278 (1972); *John Scowcroft & Sons Co. v. Roselle,* 77 Idaho 142, 289 P.2d 621 (1955); *Conte v. Dwan Lincoln-Mercury, supra. Cf., Salmon Rivers Sportsman Camps, Inc. v. Cessna Aircraft Co.,* 97 Idaho 348, 544 P.2d 306 (1975).

The cause is reversed and remanded for further proceedings consistent with this opinion.

DONALDSON and BAKES, JJ., and ROWETT and MAYNARD, JJ., Pro Tem., concur.