595 P.2d 1084

Dorothy McKINLEY, Plaintiff-Appellant,

v.

June FANNING, as the Personal Representative of the Estate of Wayne Fanning, deceased, and June Fanning, and Northwest Homes, Inc., an Idaho Corporation, Defendants-Respondents.

No. 12342.

Supreme Court of Idaho.

June 4, 1979.

Rehearing Denied June 29, 1979.

Dennis L. Albers, Grangeville, for plaintiff-appellant.

William A. Stellmon of Ware, Stellmon & O'Connell, Steve R. Cox of Randall, Bengtson & Cox, Lewiston, for defendants-respondents.

BAKES, Justice.

This is an appeal from summary judgments against plaintiff appellant Dorothy McKinley. McKinley, who slipped and fell on a public sidewalk, sought to recover damages resulting from that accident. We reverse.

In 1969, June and Wayne Fanning were the owners of the Clearwater Hotel in Pierce, Idaho, and the Clearwater Cafe which was located in part of the hotel building. Wayne Fanning is now deceased. McKinley was the lessee, occupier and operator of the Clearwater Cafe from 1969 until 1972. During that time the Fannings hired Northwest Homes, Inc., to install on the building an awning which extended over the sidewalk in front of the cafe. Northwest Homes subcontracted the installation of the awning to Mel Drader, who performed the work in 1971. Because of the manner in which the awning was installed, water allegedly drained into one corner of the awning and then onto the sidewalk in front of the cafe. The record is clear that McKinley knew of the installation of the awning and that water drained from it onto the sidewalk. The record is also clear that McKinley was aware that because of this drainage ice occasionally accumulated on the sidewalk beneath the corner of the awning. The record indicates that the awning did not reach all the way to the curb, but lacked approximately 2½ to 3 feet from covering the entire sidewalk.

In her deposition McKinley testified that on the date of the accident there was an accumulation of three to four inches of snow and slush on the street and on that portion of the sidewalk not covered by the awning and that there was an accumulation of ice on the sidewalk underneath the corner of the awning where water had drained onto the sidewalk. She testified that on the date of the accident she got out of her car, which was parked in front of the cafe, stepped up onto the sidewalk and took two or three steps to a point under the edge of the awning where she slipped and fell on ice which had accumulated from water draining off the corner of the awning. The injuries she sustained from the fall required surgery and ultimately required her to cease the operation of the cafe.

McKinley brought suit against the Fannings and Northwest Homes, alleging that her injuries were the result of Northwest Homes' negligent installation of the awning and the Fannings' negligent failure to correct the improper installation and to remedy the hazard it created. Both defendants moved for summary judgment, which the district court granted. McKinley appeals from those summary judgments.

Upon motion for summary judgment all facts and inferences must be construed most favorably toward that party against whom summary judgment is sought, and if any genuine issue of material fact remains unresolved summary judgment is improper. *Gardner v. Hollifield,* 97 Idaho 607, 549 P.2d 266 (1976); *Farmer's Ins. Co. v. Brown,* 97 Idaho 380, 544 P.2d 1150 (1976); *Southern v. Southern,* 92 Idaho 180, 438 P.2d 925 (1968); I.R.C.P. 56(c). Factual issues of negligence and proximate cause are for the jury to resolve, not the court. *Ryals v. Broadbent Development Co.,* 98 Idaho 392, 565 P.2d 982 (1977). We conclude that there were unresolved issues of material fact which precluded the trial court from granting summary judgment in this case.

As to the defendant Fanning, McKinley testified in her deposition that on several occasions she had advised Fanning that the awning had been improperly installed and had caused water to drain onto the sidewalk creating a dangerous condition. She alleged in her amended complaint that Fanning:

"negligently failed to correct the improper installation of said awning after having actual notice of the unreasonable hazard thereby created."

Furthermore, McKinley alleged in the amended complaint that the awning had been installed in violation of the municipal code of the City of Pierce, which provided that the roof of a marquee must "be sloped to downspouts which shall conduct any drainage from the marquee under the sidewalk to the curb" and that the construction of the awning violated this ordinance and was therefore negligence. Either of those two allegations raised factual issues which could not be resolved on summary judgment. Fanning's assertion on the motion for summary judgment that McKinley herself had violated a city ordinance requiring "the owner or tenant of any premises abutting or adjoining any public sidewalk to remove all snow and/or ice from such sidewalk" was not sufficient to defeat her claim for recovery. That assertion merely raised an issue of contributory negligence. Since the advent of comparative negligence, contributory negligence of the plaintiff is not grounds for granting summary judgment in favor of the defendant but requires the trier of fact to compare the contributory negligence of the plaintiff with that of the defendant. See I.C. §§ 6–801, –802.

Neither does the assertion that Fanning, as lessor, owed no duty to McKinley, the lessee, to prevent or remedy the hazardous condition because McKinley was aware of the danger supply adequate grounds for summary judgment. In this case the injury was allegedly sustained not as a result of a dangerous condition on the business premises of the cafe, but rather as the result of an allegedly dangerous condition on the public sidewalk abutting the cafe. Thus, the pan-oply of rules concerning the landowner's duties to persons on the property and the classification of those persons, such as trespassers, invitees, licensees and lessees, which are often made in those kinds of cases, see *Springer v. Pearson,* 96 Idaho 477, 531 P.2d 567 (1975), are inapposite here. *See Tripp v. Granite Holding Co.,* 22 Utah 2d 175, 450 P.2d 99 (1969); Annot., 88 A.L. R.2d 331, 346–47 (1963). The duty of care involved in this case is that owed by a landowner to pedestrians using a public sidewalk abutting the property. Certainly Fanning, who was the owner of the entire premises, lessor of the cafe and apparently the possessor of the hotel, had a duty to pedestrians using the public sidewalk to exercise reasonable care not to create a dangerous condition on the sidewalk. Fanning had a further duty to remedy any dangerous condition which his alterations of the property had caused if it jeopardized safe passage on the public sidewalk. *See* Restatement (Second) of Torts, §§ 364, 378, 379A (1965); W. Prosser, Handbook of the Law of Torts, §§ 57, 63 (4th ed. 1971); Annot., 18 A.L.R.3d 428 (1968); Annot., 88 A.L.R.2d 331, 361–64, 411–16 (1963); 39 Am.Jur.2d, Highways, Streets, and Bridges, §§ 365, 369 (1968). Although McKinley was the lessee of the cafe, at the time of the accident she nevertheless was still a member of the public, a user of the sidewalk, and therefore a person to whom Fanning owed that duty of care. However, because McKinley was a lessee and may have had some knowledge of the dangerous condition, she may have had a separate duty to correct it, a knowledge and duty not chargeable to the ordinary pedestrian using the sidewalk. But this difference between McKinley and the more typical pedestrian does not relieve Fanning of the duty to use due care to avoid creating a hazard on the sidewalk, but only raises an issue of contributory negligence of McKinley which must be resolved by the jury, not the court on a motion for summary judgment.

The district court apparently granted summary judgment to Northwest Homes, Inc., the corporation with which the

Fannings contracted for the construction of the awning, on the theory that Northwest Homes built the awning according to plans and specifications and that under the authority of *Black v. Peter Kiewit Sons'. Co.*, 94 Idaho 755, 497 P.2d 1056 (1972), it was therefore not responsible for any defect in the awning. The *Black* case, which was seriously questioned in *Yellowstone Pipe Line Co. v. Grant Construction Co.*, 95 Idaho 794, 520 P.2d 249 (1974), involved a construction contract issued by a governmental entity, the State of Idaho, and presented a situation which is not present in this case since no governmental entity is involved. In any event, the rationale of *Black* presupposes a detailed contract whereby the contractor agrees to construct according to the stated plans and specifications. Here, a factual issue remains in this record whether the contract between Northwest Homes, Inc., and the Fannings required that the awning drainage be constructed exactly in the manner in which it was actually done. Therefore, summary judgment was improper on the present state of the record.

For the foregoing reasons the judgment of the district court granting summary judgment is reversed and the cause remanded for further proceedings. Costs to appellant.

DONALDSON and BISTLINE, JJ., concur.

BISTLINE, Justice, specially concurring.

In regard to the liability of contractors for injuries to third parties which resulted from negligent work, many courts have adopted the so-called "modern rule" of foreseeability:

[A] building or construction contractor is liable for injuries to or the death of third persons, occurring after the acceptance of the completed work by the contractee, where the work is reasonably certain to endanger third persons if negligently prepared or constructed. 13 Am.Jur.2d Building and Construction Contracts § 140 (1964).

This rule has been reached by analogy with and parallel to the identical development of law in the area of products liability:

[I]t is now the generally accepted view that the liability of a contractor is the same as that imposed upon a manufacturer for injuries to ultimate consumers resulting from defective products. Under this view a contractor is held to the standard of reasonable care for the protection of third parties who may foreseeably be endangered by his negligence, even after acceptance of the work by the contractee, and the early theory that lack of privity of contract between the contractor and the injured third person was a valid defense no longer prevails. This so-called newer or "modern" view is applied in cases in which the contractor's work was imperfectly performed, and the danger, from which injury was foreseeable, arose from such defective performance; in such cases the duty of proper performance is clearly owing and it is a breach of that duty which results in the injury. 41 Am. Jur.2d Independent Contractors § 50 (1968).

In *Bush v. Albert D. Wardell Contractor, Inc.*, 165 Mont. 312, 528 P.2d 215 (1974), the architect's plans for a building did not require any ties between 8 inch and 4 inch block walls which were built one inch apart. The contractor on making the observation that such construction was fraught with potential danger told the defendant subcontractor to build the 4 inch wall using the stabilizing ties protruding from the 8 inch wall. The defendant then built the wall 18 feet high using some of the ties but bending the majority of them over. About one week later the wall collapsed injuring the plaintiff. In affirming a jury verdict for the plaintiff the court at 217 and 218 of 528 P.2d said:

Since all the persons involved in this incident agreed that an unsupported, four inch wall of this height would be dangerously unstable, the evidence at least created a jury question as to whether a reasonably prudent and skillful contractor would have acted as defendant did.

The same considerations would apply to defendant's failure to externally brace the wall, and to defendant's one-step construction to a height of eighteen feet. It is true that no one told defendant to use braces or to proceed in steps, but the jury properly could determine whether a reasonable man with defendant's knowledge of the wall's instability would have taken such precautions.

Many other jurisdictions have adopted the rule that a contractor is liable for foreseeable injuries that arise due to his negligence even after acceptance of his work. *Wright v. Creative Corporation,* 30 Colo. App. 575, 498 P.2d 1179 (1972); *Talley v. Skelly Oil Company,* 199 Kan. 767, 433 P.2d 425 (1967); *Strandholm v. General Construction Company,* 235 Or. 145, 382 P.2d 843 (1963); *Strakos v. Gehring,* 360 S.W.2d 787 (Tex.1962); *Tipton v. Clower,* 67 N.M. 388, 356 P.2d 46 (1960); *Tomchik v. Julian,* 171 Cal.App.2d 138, 340 P.2d 72 (1959); *Russell v. Arthur Whitcomb, Inc.,* 100 N.H. 171, 121 A.2d 781 (1956); *Hanna v. Fletcher,* 97 U.S.App.D.C. 310, 231 F.2d 469 (1956), cert. den., 351 U.S. 989, 76 S.Ct. 1051, 100 L.Ed. 1501 (1956).

In the present case, it cannot be said as a matter of law that Northwest did not know or was not chargeable with knowing that the awning was defective in a manner which foreseeably could lead to injury.

As stated above, the rule of liability for foreseeable injury has thus replaced a rule of non-liability with many exceptions. The precise significance in a summary judgment case such as this one is that the question of foreseeability is one for the jury. Therefore, it was error for the trial court to grant Northwest's motion for summary judgment.

SHEPARD, Chief Justice, dissenting.

I must dissent on the basis that (1) to me the record discloses no unresolved issues of material fact, and (2) the majority leaves unresolved, and therefore furnishes no guidance to the trial court on remand, a number of legal issues raised by this appeal.

It should be noted that the trial court, in its order of June 9, 1976, *found* no issues of fact necessary of resolution and concluded that the defendants-respondents were entitled to judgment as a matter of law. On appeal a divided court affirmed that summary judgment. A rehearing was granted and this Court now reverses itself.

Certain principles of law are well established. Summary judgment is improper where there remain unresolved material issues of fact. *Smith v. Great Basin Grain Co.,* 98 Idaho 266, 561 P.2d 1299 (1977); *Gardner v. Hollifield,* 97 Idaho 607, 549 P.2d 266 (1976). It is also well established that upon a motion for summary judgment all factual issues, together with all reasonable inferences which may be drawn from the facts, must be resolved and drawn in favor of the nonmoving party. I.R.C.P. 56; *Peckham v. Larsen Chevrolet-Buick-Oldsmobile, Inc.* 99 Idaho 675, 587 P.2d 816 (1978); *First Piedmont Bank & Trust Co. v. Doyle,* 97 Idaho 700, 551 P.2d 1336 (1976). It is of significance in the instant case that it is also well established that upon a motion for summary judgment a party may not rest upon the allegations in his pleadings, but must come forward with information by way of affidavit or other documentation to rebut facts otherwise established by the adverse party and thus place in issue the existence of unresolved material issues of fact. I.R.C.P. 56(e); *Lipe v. Javelin Tire Company, Inc.,* 97 Idaho 805, 554 P.2d 1302 (1976); *Johnson v. Gorton,* 94 Idaho 595, 495 P.2d 1 (1972); *Jephson v. Ambuel,* 93 Idaho 790, 473 P.2d 932 (1970).

Such rules of law are well established, and they must be applied to the facts and circumstances of the instant case. Upon the motion for summary judgment, defendants-respondents submitted affidavits in support thereof and took the deposition of plaintiff-appellant. On the other hand, plaintiff-appellant took no action whatsoever in response to the motion for summary judgment and submitted no affidavits or other documentary material which in any way placed in issue the assertions of defendants-respondents. As a result, I find no issues of material fact which remain unresolved. The facts, as stated by defend-

ants-respondents, are and remain uncontradicted.

In my judgment, the record reveals that the following facts must be taken as established at the time of the summary judgment. Plaintiff was the lessee of certain business premises known as the Clearwater Cafe in Pierce, Idaho. Fanning was the owner-lessor of those business premises. Sometime during the course of McKinley's tenancy, Fanning undertook a remodeling project involving the front portion of the premises occupied by McKinley. Included in that remodeling was the construction of an awning or marquee which extended from the front of the business premises out and over the sidewalk owned by the City of Pierce. The construction and installation of that awning or marquee was not performed by Northwest Homes, Inc., but was rather performed by one Mel Drader (not a party to this action) who was an independent contractor and not an employee or agent of Northwest Homes, Inc.

The awning was so installed that it did not extend over the full width of the sidewalk in front of the business premises occupied by McKinley. Such installation was in violation of a portion of the building code of the City of Pierce. McKinley was aware that the awning, as installed, did not extend over the full width of the sidewalk. As a result of the method of installation of the awning, water drained off the awning and caused a hazardous spot on the sidewalk in front of McKinley's business premises. McKinley was aware for approximately ten months of the drainage from the awning onto the sidewalk and, in fact, complained to Fanning of the situation.

It is contended by defendants-respondents that the city code of Pierce requires the removal of snow and/or ice from a sidewalk by the owner or tenant of premises abutting or adjoining thereto. Plaintiff-appellant asserts that the ordinance of the city of Pierce was never validly adopted. The validity of that ordinance is placed in issue upon this appeal and remains unresolved by the majority opinion. In connection therewith, the facts indicate that

McKinley ordinarily removed the snow and ice from the sidewalk in front of her business premises, but had not done so at the time of her accident thereon.

I find no dispute in the record as to any of the above set forth facts. Hence, I see no material facts which are necessary of resolution. At this juncture, we must assume that the plaintiff-appellant slipped on an accumulation of ice and snow on the sidewalk in front of her business premises, and that the hazardous condition was created by drainage from an awning over the sidewalk. We must also assume that she sustained injuries and that the injuries resulted in damage.

From these facts, the trial court and this Court must determine whether an *actionable* cause for negligence exists in *McKinley* against the defendants-respondents. To assert, as does the majority, that issues of negligence and proximate cause are for the jury to resolve, I submit merely begs the questions presented by this appeal. In my view, the above set forth facts do not lead to a conclusion of the existence of actionable negligence. Hence, the purpose of summary judgment in avoiding useless trials is well served in the instant case. *Bandelin v. Pietsch*, 98 Idaho 337, 563 P.2d 395 (1977), *certiorari denied*, 434 U.S. 891, 98 S.Ct. 266, 54 L.Ed.2d 177 (1977).

Prior to the enactment of Idaho's comparative negligence statute in 1971, a plaintiff was barred from recovery against a *negligent* defendant if plaintiff's own negligence contributed to the injury. However, since the enactment of that statute, I.C. § 6–801, a plaintiff may recover against a *negligent* defendant if plaintiff's negligence was "not as great" as defendant's. *Anderson v. Gailey*, 97 Idaho 813, 555 P.2d 144 (1976); *Fairchild v. Olsen*, 96 Idaho 338, 528 P.2d 900 (1974). Nevertheless, the negligence, if any, of the plaintiff is prematurely raised unless and until a case of actionable negligence on the part of the defendant is supported by the record. Only after there has been found to be a breach of a duty by the defendant has a sufficient cause of actionable negligence been made out. *Rehwalt v.*

*American Falls Reservoir Dist. No. 2,* 97 Idaho 634, 550 P.2d 137 (1976). I would conclude that there has been no breach of a duty by the defendant Fanning toward the plaintiff McKinley.

The elements of a cause of action based upon negligence can be summarized as (1) a duty recognized by law, requiring a defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injuries; and (4) actual loss or damage. *Brizendine v. Nampa Meridian Irrigation Dist.,* 97 Idaho 580, 548 P.2d 80 (1976); W. Prosser, Law of Torts § 30 (4th ed. 1971).

Prosser has analyzed the concept of duty as it arises in negligence:

"It is better to reserve "duty" for the problem of the relation between individuals which imposes upon one a legal obligation for the benefit of the other, and to deal with particular conduct in terms of a legal standard of what is required to meet the obligation. In other words, "duty" is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff; and in negligence cases, the duty is always the same, to conform to the legal standard of reasonable conduct in the light of the apparent risk. What the defendant must do, or must not do, is a question of the standard of conduct required to satisfy the duty. The distinction is one of convenience only, and it must be remembered that the two are correlative, and one cannot exist without the other."

W. Prosser, Law of Torts § 53 (4th ed. 1971); *Brizendine v. Nampa Meridian Irrigation Dist., supra.*

Each element of negligence must be present for the plaintiff to recover on a negligence claim. Thus, a sufficient allegation of actionable negligence must begin with a duty or obligation of a defendant to protect a plaintiff from injury and a failure to discharge that duty. Relevant to the issue of duty, the Restatement (Second) of Torts § 355 sets forth a general rule of nonliability for conditions on the property arising after the lessor transfers possession. That section provides:

"Except as stated in §§ 357 and 360–362, a lessor of land is not subject to liability to his lessee or others upon the land with the consent of the lessee or sublessee for physical harm caused by any dangerous condition which comes into existence after the lessee has taken possession."

Thus, in general, the lessor has no duty to prevent the existence of any dangerous condition on the leased property created during the tenancy. However, as noted in the above stated section, there exist certain exceptions to the general rule of nonliability.

It is argued that Restatement (Second) of Torts § 362 may provide such an exception. That section provides as follows:

"§ 362. *Negligent Repairs By Lessor.* A lessor of land who, by purporting to make repairs on the land while it is in the possession of his lessee, or by the negligent manner in which he makes such repairs has, *as the lessee neither knows nor should know,* made the land more dangerous for use or given it a deceptive appearance of safety, is subject to liability for physical harm caused by the condition to the lessee or to others upon the land with the consent of the lessee or sublessee."

(Emphasis added.)

It is undisputed that McKinley was aware of the construction of the awning, and that the construction of the awning caused drainage onto the sidewalk with its resultant accumulation of ice and snow on the sidewalk. Comment d to § 362 declares that the lessor is subject to liability if, but only if, the lessee neither knows nor should know that the purported repairs have not been made or have been negligently made and so relying upon the deceptive appearance of safety, subjects himself to the dangers or invites or permits his licensees to encounter them. Conversely, it would follow that if the lessee knows or should know that the purported repairs have not been made or have been negligently made then the lessor is not liable under this exception. *Parrish v. Witt,* 555 P.2d 741 (Mont.1976);

*Borders v. Roseberry,* 216 Kan. 486, 532 P.2d 1366 (1975).

Once Mrs. McKinley knew of the condition caused by the awning, the lessors Fannings were under no further legal duty owed to the lessee McKinley. The liability of the lessor remains only so long as the lessee had no knowledge of the danger, his duty was to either correct the defective awning *or* warn of the danger caused by the defective awning, and once the lessee knew of the danger, the warning is no longer necessary.[1] *Parrish v. Witt, supra.* I find it more than difficult, therefore, to understand the assertion of the majority that the *lack* of duty flowing from Fanning to McKinley is irrelevant.

McKinley also contends that the awning was constructed in violation of a local building code ordinance. That building ordinance provides as follows:

"Section 4505(f). *Roof Construction.*— Every roof and skylight of a marquee shall be sloped to downspouts which shall conduct any drainage from the marquee under the sidewalk to the curb."

However, failure to comply with that ordinance herein would at best only establish that the awning had been constructed in a *negligent manner.* The Restatement (Second) of Torts § 362 specifically states that the fact that repairs were made in a *negligent manner* is not actionable where the lessee has knowledge of that negligent construction. The record in this case demonstrates that there is no genuine issue about the material and dispositive fact that Mrs. McKinley was fully aware of the accumulation of ice beneath the awning. Even

if all of the remaining issues of fact are resolved in favor of McKinley, it cannot be found that the defendants breached a duty owed to her.

On rehearing, the argument is raised for the first time in the amicus curiae brief that Restatement (Second) of Torts § 360 provides an additional exception to the general rule of nonliability. That section basically provides for the lessor's liability for a defective condition arising on parts of the property retained in the lessor's control. However, there are no allegations or other indications whatsoever in the record that the Fannings retained control over the awning, or the sidewalk beneath the awning where McKinley allegedly fell. The record merely indicates that the Fannings entered onto the premises leased to Mrs. McKinley to construct the awning and immediately thereafter left the premises in the exclusive control of McKinley. Therefore, the common area exception is inapposite to the facts in this case. Nor would I find any of the other exceptions to the general rule of nonliability applicable to the facts as alleged in this case. Appellant McKinley simply has failed to state sufficient facts indicating that the Fannings have breached a legal duty owed by them to Mrs. McKinley. Therefore, I would find that the trial court correctly granted summary judgment in favor of the defendant Fannings.

McKinley alleged in her complaint that defendant-respondent Northwest Homes, Inc. "negligently installed" the awning in violation of the building code of the City of Pierce. In that regard, McKinley sub-

---

1. Some discussion is warranted as to whether the Restatement section is appropriate since the enactment of I.C. § 6–801, *et seq.,* the comparative negligence act. I note that § 362 focuses solely on the duty owed by the lessor to his lessees. That section does not require a consideration of the reasonableness of the lessee's action in encountering the defective condition. Thus, once the lessor has complied with his duty to warn, the actions of the lessee are irrelevant and therefore the lessee's "contributory negligence" is not an issue. If the lessor has not breached a legal duty, he cannot be found negligent and there exists no negligence of the defendant lessor that can in turn

be compared with that of the plaintiff lessee. Compare the Restatement (Second) of Torts § 343A, the rationale of which was adopted in *Ryals v. Broadbent Dev. Co.,* 98 Idaho 392, 565 P.2d 982 (1977). That section deals with the liability of a possessor of property to his *invitees* for a condition on the land the danger of which is known to them. Comment f of that section states that whether the danger is known or obvious, is important in determining whether the invitee is to be charged with contributory negligence or assumption of the risk. Thus, the landlord may have more than a duty to warn his *invitees.*

mitted interrogatories to Northwest Homes, Inc. The answers to those interrogatories, together with the affidavit of Northwest Homes, Inc., revealed that Northwest Homes, Inc. did not install the awning negligently or otherwise. The materials were obtained by and the awning installed by one Mel Drader, not a party to this action. Mel Drader is not an agent, servant or employee of any of the parties to this action, but is established to be an independent contractor. To these factual statements made under oath, McKinley made no reply.

. Even if the above facts establishing non-liability on the part of Northwest Homes, Inc. are ignored, the majority fails to deal with an additional legal question arising from the undisputed fact that the awning was constructed in conformity with the plans and specifications approved by the Fannings. This Court held in *Black v. Peter Kiewit Sons' Co.,* 94 Idaho 755, 757, 497 P.2d 1056, 1058 (1972), that "if a contractor performs his work according to plans and specifications, no liability may be imposed upon him for any damage resulting from such construction." The underlying theory of this rule is that where one who employs a contractor to erect a structure on his premises provides the plans and specifications the contractor is not required to sit in judgment on those plans and specifications. In such a case the responsibility is assumed by the employer. The contractor is not subject to liability if the specified design turns out to be insufficient to make the premises safe for use, unless it is so obviously bad that a competent contractor would realize that there was a grave chance that his product would be dangerously unsafe. *See generally,* Restatement (Second) of Torts § 385 and § 404, Comment a. W. Prosser, Law of Torts § 104 (4th ed. 1971).

There exist among other jurisdictions widely differing views as to the duty or standard of conduct owed by a lessor to his lessee. There also exist differing views as to the liability of an independent contractor upon the acceptance of his work. In my view, such are unresolved legal issues in this state and the majority opinion simply avoids deciding such issues. The majority

asserts that Fanning owed as much duty to McKinley as any other pedestrian using a public sidewalk. This is so in spite of the ordinance (the validity of which is undecided by the majority) which placed a duty on *McKinley* to clear the snow and ice from the sidewalk and which duty she had undertaken. Such conclusion also ignores what I had assumed was well established law as expressed in the Restatement (Second) of Torts § 356, Comment a, which states in pertinent part:

"When land is leased to a tenant, the law of property regards the lease as equivalent to a sale of land for the term of the lease. The lessee acquires an estate in the land, and becomes for the time being the owner and occupier, subject to all of the liabilities of one in possession, both to those who enter the land and to those outside of it."

The majority observes that,

"[B]ecause McKinley was a lessee and may have had some knowledge of the dangerous condition, she may have had a separate *duty* to correct it, a knowledge and duty not chargeable to the ordinary pedestrian using the sidewalk. But this difference between McKinley and the more typical pedestrian does not relieve Fanning of the duty to use due care to avoid creating a hazard on the sidewalk, but only raises an issue of *contributory negligence* of McKinley which must be resolved by the jury, not the court on a motion for summary judgment."

Such conclusion, I believe, only confuses the concept of duty and contributory negligence. McKinley, as lessee, had a duty to clear the ice and snow from the sidewalk caused by a defective condition of the premises of which she had knowledge. She breached that duty, and she herself was injured as a result thereof. I fail to see how an issue of contributory negligence arises. The majority provides us only with muddy water and murky analysis.

In my view, the record demonstrates no controverted or unresolved issues of material facts. Although plaintiff-appellant

McKinley had the opportunity to controvert the sworn factual statements of defendants-respondents, she has not chosen to do so. The law is clear in Idaho that a party may not adopt such a position and then complain of the issuance of summary judgment on the basis that there are facts lurking in the background necessary of resolution. I would affirm the orders of summary judgment issued by the trial court.

McFADDEN, J., concurs.